ALBERT T. FELIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY ANN FELIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALBERT FELIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20771, 31268, 31269. Promulgated February 26, 1954.

*Sidney B. Gambill, Esq.*, for the petitioners.
*Fortescue W. Hopkins, Esq.*, for the respondent.

LeMire, *Judge*: These consolidated proceedings involve deficiencies in income taxes for the years and in the amounts as follows:

|  | Year | Deficiency |
|---|---|---|
| Albert T. Felix | 1944 | $62,114.59 |
|  | 1945 | 9,421.90 |
|  | 1946 | 12,128.45 |
| Mary Ann Felix | 1945 | 8,033.89 |
|  | 1946 | 11,117.09 |

The contested issues are:

1. Whether respondent erred in refusing to recognize Ernest Felix and his wife, Mary Felix, as bona fide partners in Brentwood Coal & Coke Company No. 1 and No. 2 and taxing their share of the parnership income to partners equally.

2. (a) Whether the respondent erred in disallowing as deductions to the partnership, conducted under the name of Brentwood Coal & Coke Company, the amounts of $43,480, $31,076.80, and $8,880 paid by the partnership to the Commonwealth Trust Company, as trustee, in the respective taxable years 1944, 1945, and 1946, representing rentals for the use of a bulldozer and shovel; and (b) whether the respondent erred in disallowing as a deduction to the partnership, conducted under the name of Brentwood Coal & Coke Company No. 1 and No. 2, the amount of $4,600 paid by the partnership to the Commonwealth Trust Company, as trustee, in the taxable period ended February 28, 1946, as rentals for the use of a bulldozer.

3. Whether the respondent erred in including as taxable income to each of the petitioners in the taxable year 1946 one-half the amount of $32,040, representing rentals paid by the Brentwood Coal Company, Inc., a corporation, to the Commonwealth Trust Company, as trustee, during the year 1946, for the use of a bulldozer and 10 trucks.

4. Whether the respondent erred in including as long-term capital gain to each of the petitioners in the taxable year 1946 one-half of the profit realized on the sale of the Erie 43-B shovel sold by the Commonwealth Trust Company, as trustee, on February 28, 1946.

Other issues were raised by the pleadings. These issues and the disposition thereof, as stipulated or conceded by the parties on brief, will be reflected in the computations under Rule 50.

The facts as stipulated are found accordingly.

### GENERAL FACTS.

The petitioners, Albert T. Felix and Mary Ann Felix, are husband and wife, residing in Pittsburgh, Pennsylvania. Their individual tax returns for the respective periods involved were filed with the col-

lector of internal revenue for the twenty-third district of Pennsylvania. Petitioners kept their books and filed their returns on the calendar year basis on the cash receipts and disbursements method of accounting.

On September 1, 1943, Albert T. Felix and his wife, Mary Ann Felix, entered into a written partnership agreement for the purpose of conducting the business of mining and selling coal under the name of Brentwood Coal & Coke Company. The agreement provided that the profits and losses of the partnership business were to be shared equally.

Brentwood Coal Company, Inc., is a Pennsylvania corporation and was organized on April 13, 1946. It kept its books on a fiscal year basis beginning March 1 and ending February 28 and on the accrual method of accounting. The petitioners, throughout the periods involved, were its sole stockholders.

## *Issue 1.*

### FINDINGS OF FACT.

In 1945 the petitioners located two coal stripping sites in Ohio. Thereupon, the petitioners invited Albert's younger brother, Ernest Felix, and his wife, Mary Felix, to join with them in carrying on coal stripping operations on the Ohio sites. The parties agreed orally to engage in such business under the name of Brentwood Coal & Coke Company No. 1 and No. 2 to distinguish it from the partnership of the petitioners then engaged in coal mining operations in Pennsylvania. It was agreed that the initial capital of the partnership was to be $4,000, each partner contributing $1,000. On July 26, 1945, each partner made his contribution of $1,000, which was deposited in a bank under the name of Brentwood Coal & Coke Company No. 1 and No. 2. A set of partnership books was opened and checks bearing the partnership name were printed.

Ernest Felix, who had had some experience in the coal business, was then employed with a company engaged in the manufacture of water tanks. It was intended that he was to continue his employment but was to go out occasionally to oversee the operations of the partnership. It was not contemplated that Mary Felix was to perform any services for the partnership and she in fact rendered none. It was expected that Albert T. Felix and his wife, Mary Ann Felix, would render more extensive services to this partnership. Therefore, it was agreed that the profits of the partnership were to be divided on a basis of 35 per cent each to Albert T. Felix and Mary Ann Felix and 15 per cent each to Ernest Felix and his wife, Mary Felix.

The operations of the partnership were conducted under the supervision of hired employees. Albert T. Felix made periodic visits to oversee the conduct of the business. Ernest visited the operations on

a couple of occasions but decided he did not like that type of work. Thereupon, it was mutually agreed to dissolve the partnership as of the end of the fiscal year, February 28, 1946.

A partnership return was filed which disclosed a net profit of $17,851.65 for the short period the partnership was in existence.

Upon dissolution of the partnership Ernest Felix and Mary Felix each received, in addition to their original capital contributions, 15 per cent of the net profits of the partnership.

In determining his deficiency against the petitioners the respondent refused to recognize Ernest Felix and his wife, Mary Felix, as bona fide partners in the partnership conducted under the name of Brentwood Coal & Coke Company No. 1 and No. 2 and taxed all of the net income of the partnership to the petitioners equally.

Ernest Felix and Mary Felix and the petitioners in good faith intended to and did join together as partners in the operation of a partnership business under the name of Brentwood Coal & Coke Company No. 1 and No. 2 during the period from July 26, 1945, to February 28, 1946.

Ernest Felix and Mary Felix are each taxable on 15 per cent of the net profits of such partnership.

### OPINION.

The question presented involves the propriety of the respondent's determination that Ernest Felix and his wife, Mary Felix, were not bona fide members of the partnership business conducted under the name of the Brentwood Coal & Coke Company No. 1 and No. 2.

In support of his position that Ernest and Mary Felix were not bona fide partners in the Ohio coal mining operations, the respondent contends that the alleged partnership arrangement was a device to enable the petitioners to reduce their surtax and split their income among the family group. He points out that no formal agreement was executed; that the contributions of Ernest and his wife, Mary, were inconsequential and inadequate to justify their receiving 15 per cent of the net income of the business; that Ernest contributed no substantial services and his wife, Mary, no services at all. The respondent argues that the profits were the result of the properties and services contributed by the petitioners, who were the true earners of the income, and that the income is taxable to them. *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136.

It is not disputed that Ernest Felix and his wife, Mary, did each contribute to the partnership business his own capital, and that Ernest Felix performed some services of a supervisory nature. The respondent has not made an allocation of the income of the partnership to the respective contributions upon the basis of capital and

services but has merely denied recognition of Ernest Felix and his wife, Mary, as partners.

The instant case differs from the usual family partnership arrangement where an established and successful business is by gift or assignment split among the units of the immediate family group. The parties here were entering upon a new risk enterprise. All of the parties contributed an equal amount of the initial capital. The amount of capital and services required was a matter for the judgment of the parties. The character of the business and the manner in which it was to be operated through hired employees and with leased equipment required no large capital investment and only supervisory services to be rendered by the partners. The division of the profits, likewise a matter of the judgment of the parties, was not based on capital contributions but upon a realistic view of contemplated services to be contributed to the enterprise. Obviously, because of the experience, skill, and knowledge of the petitioners, who were operating a similar business, the larger percentage of the profits was allotted to them. We are not convinced that the necessary economic substance and reality is here lacking to justify the inference that the arrangement in question was a sham or device for reducing what would otherwise be the tax liability of the petitioners.

In *Commissioner* v. *Culbertson*, 337 U. S. 733, the Supreme Court has set forth the criteria to be applied in determining the factual question as to whether a partnership is to be recognized as valid for the purpose of taxation. We think the evidence here meets such test.

Upon consideration of all the facts and circumstances, the oral agreement, the conduct of the parties in carrying out such agreement, and all other pertinent factors bearing on the question of intent, we have found as a fact that the petitioners, Ernest Felix, and his wife, Mary Felix, in good faith intended to and did join together as partners in the conduct of a partnership business under the name of Brentwood Coal & Coke Company No. 1 and No. 2. Hence, 15 per cent of the net income of such partnership is taxable to Ernest Felix and his wife, Mary Felix.

We hold that the respondent erred in taxing all the income of that partnership equally to the petitioners.

*Issue 2.*

#### FINDINGS OF FACT.

On December 31, 1943, the petitioners established an irrevocable trust for the benefit of their minor children, appointing the Commonwealth Trust Company as trustee. The provisions of the trust agreement, pertinent here, read as follows:

MADE this 31st day of December A. D., 1943, between ALBERT T. FELIX and MARY ANN FELIX, his wife, hereinafter called Settlors,

AND

COMMONWEALTH TRUST COMPANY OF PITTSBURGH, PENNSYLVANIA, hereinafter called Trustee;

WITNESSETH: That in consideration of the mutual promises of the parties hereto, the Settlors hereby give to the Trustee the sum of Six Thousand ($6,000.00) Dollars cash in trust, however, for the following uses and purposes and under the following conditions:

1. The Trustee shall invest said money in Power Shovels, Bull-Dozers, Automobiles and any other equipment, necessary or convenient for use in connection with the mining and removing of coal by what is known as the stripping method, or in the excavation of earth, rock or other materials and the transportation of the same. The said Trustee is also authorized and empowered to encumber or pledge the said equipment or any part thereof for the purpose of raising moneys with which to purchase or acquire other and additional equipment, and also to purchase equipment on time payments if deemed advisable by it. Said Trustee is also authorized and empowered to let or sublet such propery [*sic*] and equipment at such rental and upon such terms and conditions as may be satisfactory in the judgement [*sic*] of the Trustee, or to sell the same or any part thereof when in the judgement [*sic*] of the said Trustee it is advisable so to do. The Trustee is further authorized and empowered to invest the money in said trust arising from earnings or otherwise in such investments, business ventures, securities, properties or businesses as it in its discretion may seem fit and shall not be restricted to the class of investments known as legal investments nor to investments which fiduciaries are or may be permitted to make under the laws of the State of Pennsylvania and shall have all the rights and privileges which are incident in any case to the ownership of such property. In carrying out the provisions of this trust, the Trustee shall not be liable for business risks assumed, but shall be liable only for gross negligence, misfeasance or malfeasance.

2. This trust is created for the benefit of June Mary Ann Felix and Alberta Jean Felix, minor children of Settlors, and also of any other child or children born to Settlors in the future.

3. The Trustee shall pay out of this trust, from either income or principal, such sums of money as in its judgment and discretion may seem necessary from time to time for the maintenance, support and education of the said children of Settlors, not in excess, however, of the sum of $750.00 per annum for each child of Settlors. Such payment shall not be made, however, unless in the opinion of the Trustee such payments are necessary for the support, maintenance and education of said children.

4. As each child of Settlors arrives at the age of twenty-one years the net income of the trust as existing at that time shall be divided into as many shares as there shall be children and the share of such child so becoming twenty-one years of age paid over to it. And as each child reaches the age of twenty-one years, the same course of procedure shall be pursued. When the youngest child of Settlors, reaches the age of twenty-one years, then all of the assets of this trust shall be sold and the net proceeds thereof, less proper charges and expenses shall be divided equally between all of the children of the said Settlors. If any child has died, leaving to survive it a child or children, the share of such deceased child shall be given to its child or children. If any child shall die without leaving any child or children to survive him or her, its share shall be distributed pro-rata to the remaining children.

5. In making settlements and distribution as each child shall reach the age of twenty-one years, any child or children who shall have theretofore received a

share of the net profits of this trust, shall be entitled to further receive its share of any additional net income accumulated since its previous settlement on arriving at the age of twenty-one years. In other words, the trust shall continue for the benefit of all of the children until the youngest child shall have arrived at the age of twenty-one years, participating, however, in distributions as heretofore provided. Should there be losses sustained between such settlement periods, the share of any child received in excess of the share of the child at that time to be distributed, its share of such loss shall be charged against the share of such child in the final settlement and distribution of the trust.

6. The Trustee shall receive compensation at the rate of five percentum of the net annual income derived from this trust.

7. The Trustee shall render an account annually as of December 31st of each year to all the parties in interest. Unless a party in interest requires it, no account at any time need be filed at any time in any Court in Pennsylvania, nor shall the Act of Assembly of June 26, 1931, P. L. 1384, apply to this agreement unless a party in interest invokes it.

8. This agreement and the trust created hereunder shall be irrevocable and not subject to modification and in no event shall the grantors or Settlors have the right to repossess the income or the principal of the trust estate or any part thereof.

9. Wherever practicable, investments shall be held in the name of the Commonwealth Trust Company of Pittsburgh, Pennsylvania, Trustee for the children of Albert T. Felix and Mary Ann Felix under Trust Agreement dated December 31, 1943.

10. The Trustee shall serve without bond.

11. The principal of this trust and the income therefrom so long as the same is held by the Trustee shall be free from debts, liabilities and engagements of June Mary Ann Felix, Alberta Jean Felix or any other children of Settlors who shall become beneficiaries under this trust and shall not be subject to the attachment, levy, execution or sequestration under any legal, equitable or other process for the enforcement of judgements [sic] or claims of any sort against them.

12. The Settlors shall have the right at any time and from time to time, [to] give, grant, convey, assign, deliver or deposit with the Trustee, additional cash, securities or property which thereupon shall become a part of this trust estate, subject in every respect to the trust and to all the terms and conditions of this agreement.

The amount of $6,000 was transferred to the corporate trustee.

On January 1, 1944, petitioners, trading as Brentwood Coal & Coke Company, sold an RD–8 Caterpillar bulldozer to the trust for $9,594. The terms provided for a cash payment of $6,000, $1,154 to be paid within 60 days, and the assumption by the trust of the $2,440 remaining unpaid balance owing to Beckwith Machinery Company, from which the bulldozer had been purchased on June 24, 1943, at a cost of $10,660.48. The sales price of the bulldozer to the trust represented its cost less depreciation computed on the basis of the useful life of 4⅚ years. The maximum ceiling price established by the regulations of the Office of Price Administration, hereinafter referred to as O. P. A., on the date of sale was $8,759.37.

On the same date the trustee entered into an agreement with Brentwood Coal & Coke Company, leasing to the latter the same bulldozer

for a term of 3 months and from month to month thereafter, with the privilege to either of the parties to cancel the lease upon 15 days' notice. The rental thereof was set at $1,005 per month for an 8-hour shift, plus $502.50 for a second 8-hour shift, and $502.50 per month for a third 8-hour shift, or a total of $2,010 per month, if used for three 8-hour shifts per day.

The rental paid for the use of the bulldozer prior to June 1945 was at the rate of $1,005 per month for the first 8-hour shift and 50 per cent thereof for each additional shift, which was the exact ceiling price fixed by the O. P. A. Upon inquiry to the O. P. A. in June 1945, the trustee was erroneously advised that the ceiling on the rental of the bulldozer was $920 for the first 8-hour shift, and $458.40 for the second and third shifts, respectively, and such rates were used after June 1945.

On January 28, 1944, Brentwood Coal & Coke Company sold to the trust a Bucyrus Erie 43–B 1¾-cubic yard Diesel-powered shovel for the sum of $14,785.76, to be paid for by monthly payments of $1,760 until the total amount was paid. The selling price of the shovel was slightly in excess of the then O. P. A. ceiling price.

On February 1, 1944, the trustee leased the shovel to Brentwood Coal & Coke Company for a term of 9 months, and on a monthly basis thereafter, with the privilege of either party to cancel upon 15 days' notice. The rental was fixed at $1,760 per month, with the right of the lessor to demand additional payment if the shovel were used more than one 8-hour shift per day. The rental was the exact ceiling rate fixed by the O. P. A.

During 1944, 1945, and 1946, Brentwood Coal & Coke Company paid the trustee, as rentals for the bulldozer and shovel, the sums of $43,480 in 1944, $31,076.80 in 1945, and $8,880 in 1946.

During the taxable period ended February 28, 1946, the partnership of Brentwood Coal & Coke Company No. 1 and No. 2 paid to the trustee the amount of $4,600, as rental for the use of an RD-8 bulldozer. The monthly rental rate paid was $920, which was slightly less than the O. P. A. ceiling rate. In the partnership returns filed by the respective partnerships for the taxable periods involved, deductions representing rentals paid to the trustee were claimed by each partnership and were denied by the respondent in their entirety.

At the time the bulldozer and shovel were sold to the trust, Brentwood Coal & Coke Company owned other coal stripping equipment having a cost basis in excess of $100,000, consisting of bulldozers, shovels, and tractors, etc. In addition, the partnership rented equipment from one Allen as needed from time to time. In June 1945 it rented another bulldozer of the same size and type as that sold to the trust at a rental of $1,025 per month for the first shift; in March 1945, a Northwest 1¾-cubic yard Diesel shovel was rented for $1,760

802

monthly, and in November 1946, a Manitowac 2½ cubic yard shovel was rented for $3,500 per month. All of these rentals were at the O. P. A. ceiling rates for such equipment.

From time to time the trustee was furnished regular statements showing the number of shifts in which the equipment was worked. At times when petitioners were in default on their rental payments the trustee by written notice or personal contact asserted its demand for payment.

No part of the trust income has been used for the maintenance, support, or education of petitioners' children, nor has any part of the income inured to the benefit of the petitioners. The trustee at all times acted independently and was not under the control of the donors.

The transfers made by the petitioners to the trust created December 31, 1943, for the benefit of their children were valid and completed gifts to the named beneficiaries. The trust instrument was valid and is to be recognized for tax purposes. The sale and lease agreements entered into between the trustee of the children's trust and the respective partnerships were bona fide transactions.

The rentals paid by the respective partnerships to the trustee of the trust for the children were reasonable in amount and constitute ordinary and necessary business expenses in the respective taxable years involved.

OPINION.

This issue presents the question of the deductibility as business expenses of certain rentals paid to the trustee of a trust established by the petitioners for the benefit of their children in computing the net taxable income of the petitioners.

On December 31, 1943, the petitioners established an irrevocable trust for the benefit of their minor children, transferring to the Commonwealth Trust Company, as trustee, cash in the amount of $6,000. The corpus and income of the trust were to be held by the trustee until the youngest child reached the age of 21, when the trust was to terminate. The trustee in its discretion was empowered to pay out of income or corpus an amount not exceeding the sum of $750 per annum for the education, maintenance, and support of each child. As each child reached the age of 21 the trustee was directed to divide the accumulated net income into as many parts or shares as there should then be children and the share of the child then becoming 21 was to be paid to it.

The trustee was given broad powers of investment and reinvestment of the corpus and income of the trust estate, and was to be relieved of any liability for business risks assumed.

At the time of the establishment of the trust the petitioners were engaged in the coal mining business as partners under the name of

Brentwood Coal & Coke Company. The petitioners owned considerable mining equipment which was then being used in the operation of their business.

On January 1, 1944, the petitioners sold to the trustee an RD-8 bulldozer, and on January 28, 1944, a Diesel-powered shovel, at the prices and on the terms set forth in our Findings of Fact. The prices fixed for the bulldozer and shovel approximated those fixed by the O. P. A.

The respondent contends that the trust and the sale and leaseback arrangements were steps in a device to permit petitioners to assign income of the partnership to the children's trust and that the transactions should not be recognized for tax purposes. He argues that the corporate trustee was not an independent trustee but merely carried out the wishes of the petitioners; that the trustee purchased only equipment suggested by the petitioners; that the equipment was required in the operations of the partnership; that the trustee rented no equipment to others than the petitioners; and that no business purpose was served by the sale and leaseback arrangements. The respondent relies upon such decisions as *W. H. Armston Co.* v. *Commissioner*, 188 F. 2d 531, affirming 12 T. C. 539; *Ingle Coal Corp.* v. *Commissioner*, 174 F. 2d 569, affirming 10 T. C. 1199; and *White* v. *Fitzpatrick*, 193 F. 2d 398, certiorari denied 343 U. S. 928. In the *Armston* case the deduction of rentals was disallowed on the ground that the alleged sale was a sham because the corporation had not completely divested itself from the ownership of the property. In *Ingle Coal Corporation* it was held under the facts presented that the questioned transaction was a mere shifting device, without economic reality and substance. In *White* v. *Fitzpatrick* the court found that the taxpayer had in fact remained the real owner of the property.

The petitioners rely on the cases of *Skemp* v. *Commissioner*, (C. A. 7) 168 F. 2d 598, reversing 8 T. C. 415, and *Brown* v. *Commissioner*, (C. A. 3) 180 F. 2d 926, reversing 12 T. C. 1095, certiorari denied 340 U. S. 814. In the *Skemp* case the taxpayer had conveyed to an irrevocable trust, of which his wife was the beneficiary, property he previously owned. The trustee thereupon leased a portion of the property back to the donor for what this Court found to be a reasonable rental. The Court of Appeals for the Seventh Circuit held that the fact that what was done was pursuant to a prior understanding was not significant, but what was controlling was the fact that there was a new independent owner, the trustee, who was in a position to and did require the payment of the rents as a condition to the use of the premises, for the purposes of their business and without regard to whether their operations resulted in taxable income. In the *Brown* case there was also a conveyance to an irrevocable trust and a leaseback arrangement pursuant to a prior understanding.

This Court, reaffirming its position taken in the *Skemp* case, refrained from following the reversal by the appellate court in that case. On appeal the Court of Appeals for the Third Circuit, finding the significant facts identical with the *Skemp* case, adopted the view expressed by the Court of Appeals for the Seventh Circuit and reversed. Cf. *Consol. Apparel Co.* v. *Commissioner*, 207 F. 2d 580, and *Stearns Magnetic Mfg. Co.* v. *Commissioner*, 208 F. 2d 849.

In the instant proceeding the petitioners, by their trust deed, irrevocably divested themselves of the property transferred to the trust created for the benefit of their children. The trustee was a corporate trustee, and we find substantial evidence to justify the inference that the trustee did act independently and in the best interest of the beneficiaries of the trust. We think the respondent places undue emphasis upon the exculpatory provision of the trust instrument. Such a provision is not uncommon where the trustee is not confined to legal investments but is given broad powers of investment in the administration of the trust. We hold that the trust was valid and is to be recognized as such. The sale and lease arrangements between the trustee and the petitioners appear to have been entered into in good faith. The equipment was sold to the trust and leased back at prices fixed by the O. P. A. and so must be regarded as fair and reasonable. No injury resulted either to the trust estate or the business carried on by the petitioners. Under such circumstances the sale and lease arrangements are to be regarded as bona fide transactions. The rentals paid to the trustee are found to be reasonable in amount. We think the case at bar is not readily distinguishable from the *Skemp* and *Brown* cases, *supra*. Accordingly, we adopt the view expressed by the appellate courts and hold that the rental payments constitute ordinary and necessary business expenses of the respective partnerships and are deductible under the provisions of section 23(a) (1) (A) of the Internal Revenue Code in the taxable years in which paid. Therefore, the respondent erred in taxing to the petitioners as income the rentals paid to the trustee in the taxable years in question.

*Issue 3.*

#### FINDINGS OF FACT.

In April 1946 the petitioners incorporated the Brentwood Coal Company, Inc., for the purpose of engaging in coal strip mining in Ohio. The petitioners were the sole stockholders.

On April 15, 1946, the Commonwealth Trust Company, as trustee of the children's trust, purchased 10 army surplus trucks for a total consideration of $38,000, upon the understanding that the corporation would lease the trucks from the trust. On April 20, 1946, the trustee, by written lease, leased to the corporation 10 trucks for a period of

1 year at a monthly rental of $3,200, which was $220 less than the maximum O. P. A. ceiling rate.

During 1946 the corporation also rented from the trust a bulldozer at a monthly rental of $920 per month.

During the calendar year 1946 the corporation paid to the trustee the amount of $25,600 as rental for the use of the trucks and $6,440 for the use of the bulldozer.

In determining the deficiencies against the petitioners the respondent included as taxable income to each petitioner 50 per cent of the amount of $32,040.

The rentals paid to the trustee for the use of the trucks and bulldozer were reasonable in amount and were ordinary and necessary business expenses of the Brentwood Coal Company, Inc.

## OPINION.

On brief, the respondent concedes error in taxing equally to the petitioners the rentals paid by the corporation to the trustee in the amount of $25,600 for the use of the trucks. The remaining question presented involves the propriety of including the sum of $6,440 paid by the corporation to the trustee in 1946 as rental for the use of the bulldozer. The respondent takes the position that the trustee made no lease with the corporation covering the use of the bulldozer which had previously been leased to the Brentwood Coal & Coke Company, and that presumably the rent was paid under a sublease from the Brentwood Coal & Coke Company and was constructively received by the petitioners. We find little merit in this contention. There is no evidence to indicate the existence of any sublease. It is not disputed that the $6,440 was paid by the corporation to the trustee. The corporation used the bulldozer and in the absence of a lease it was legally obligated to pay the reasonable rental value for such use. The bulldozer was the property of the trust and the rental paid to the trustee was taxable income of the trust. Assuming, *arguendo*, that the corporation subleased from the partnership of petitioners, the latter would have been required to pay the rentals to the trustee under its lease, and the partnership would be entitled to deduct the amount as a business expense. The petitioners would not have received additional income from the transaction.

We, therefore, hold that the respondent erred in taxing as income equally to the petitioners in 1946 the amount of $6,440 received by the trustee from the corporation as rental for the use of the bulldozer.

### Issue 4.

#### FINDINGS OF FACT.

In the partnership return of the Brentwood Coal & Coke Company for 1946 there was reported as net long-term capital gains from the

sale of certain capital assets, exclusive of the sale of an Erie 43–B shovel, the total amount of $20,060.70 recognizable to the extent of 50 per cent, or $10,030.35. One-half of this amount, or $5,015.18, was reported by each of the petitioners.

In his deficiency notice the respondent increased the net long-term capital gain by the amount of $8,787.43, representing the gain realized from the sale in 1946 of the Erie 43–B shovel.

The parties have stipulated that the correct amount of net long-term capital gains, exclusive of the gain from the sale of the shovel, is $19,819.90, recognizable to the extent of 50 per cent, or $9,909.95.

On April 29, 1946, the trustee of the children's trust sold to Everett Moses an Erie 43–B shovel, which the trustee had purchased from the Brentwood Coal & Coke Company on January 28, 1944.

The parties have stipulated that the net long-term gain realized from the sale of the Erie 43–B shovel is $9,909.95, rather than the amount of $8,787.43 shown in the deficiency notice.

The gain realized from the sale of the Erie 43–B shovel is taxable to the children's trust.

#### OPINION.

The question presented is whether the respondent erred in taxing to the petitioners equally 50 per cent of the net long-term capital gain realized from the sale in 1946 of the Erie 43–B shovel.

It is the contention of the respondent that, since the trust established by the petitioners and the sale and leaseback arrangements between the trustee and the petitioners, as partners operating under the name of Brentwood Coal & Coke Company, were not bona fide transactions, the sale of the shovel in question was made by the petitioners and not by the trustee.

The petitioners contend that the shovel was property of the trust and the gain realized from the sale was taxable to it.

Since we have held under Issue 2 that the sale and leaseback agreements between the trustee of the children's trust and the Brentwood Coal & Coke Company were bona fide transactions and entitled to recognition for purposes of taxation, the contention of the petitioners is sustained.

We, therefore, hold that the respondent erred in taxing as income to each petitioner 50 per cent of the net capital long-term gain realized from the sale in 1946 of the Erie 43–B shovel.

In the computations under Rule 50 effect will be given to the stipulations and concessions of the respective parties set forth herein.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

RAUM, *J.*, dissenting: It is inconceivable to me that Congress ever intended to permit deductions of the type approved herein, notwithstanding the elaborate effort to cast them in the form of business expenses, a mere device without economic reality or substance regardless of whether the transactions may or may not properly be described as "bona fide."

TURNER, OPPER, and RICE, *JJ.*, agree with this dissent.