OPINION. AnuNDEUi, Judge: The respondent contends that his determination under the first and principal issue must be sustained on any one of several grounds, namely: (1) That petitioner has failed to prove that the trust instrument in question was executed prior to December 31, 1946; (2) that petitioner has failed to prove that he made a valid assignment and delivery of the patent application to the trusts; (3) that assuming a valid assignment and delivery, petitioner has still failed to prove that he made a valid inter vivos gift of the patent application to the trusts in that he continued to exercise such complete dominion and control over the property throughout the tax years for his own benefit, without any interference from friendly trustees, as to make such trust income taxable to him under section 22 (a) of the 1939 Code and the doctrine of Helvering v. Clifford, 309 U. S. 331 (1940); and (4) that in any event petitioner is not entitled to deduct under section 23 (a) (1) (A) of the 1939 Code the royalties that accrued under the license agreement executed between petitioner and the trustees at the time the trusts were created. Regarding respondent’s contention that petitioner has failed to prove the trust instrument was executed prior to December 31, 1946, petitioner testified that, to the best of his memory, it was executed in the early part of 1944. He said he knew it occurred when his business began to look fairly good. This was in the latter part of 1943 and early in 1944. The instrument is dated January 1, 1944, but it names as one of the beneficiaries John Taft Potter, Jr., who was not born until January 28, 1944. Certainly it was in existence on October 31, 1944, when the trustees entered into a license agreement with the United States Government, and on October 25, 1945, when they entered into a license agreement with the American Totalisator Company. Both of these dates were before December 31, 1946. It would seem that the best evidence as to when the trust agreement was executed was when the grantor and the three trustees appeared before the notary and acknowledged that they had executed the “foregoing instrument.” This was on February 1, 1944. The only evidence that would cast any doubt on the latter date is the letter from Nussenfeld dated January 3, 1945. But this was after October 31, 1944. Furthermore, the evidence relative to the letter from Nussenfeld is very meager. The record does not show what Nussenfeld had before him which prompted his suggestions with reference to the trust agreements. Harold T. Potter did not testify. In any event, the suggestions made by Nussenfeld do not appear in the trust agreement. We have found as an ultimate fact and so hold that the agreement mentioned in paragraph 4 of the stipulation was executed on February 1, 1944. We do not agree with respondent that there was no valid assignment or delivery of the patent application to the trusts. Section 47[2] of Title 35 of the United States Code, as it existed in 1944, provides that “[e]very application for patent or patent or any interest therein shall be assignable in law by an instrument in writing * * *” and that “[i]f such assignment, grant or conveyance of any application for patent or patent shall be acknowledged before any notary public * * * the certificate of such acknowledgement * * ■* shall be prima. facie evidence of the execution of such assignment, grant, or conveyance.” Paragraph First of the trust instrument, together with petitioner’s acknowledgement before the notary, all of which are set out in our findings, clearly show that there was a valid assignment in accordance with statutory law, both of the application itself and “any and all patents issued thereon.” Respondent makes a point that there was no manual delivery of the application itself. This was impossible since, in 1944, this application was on file with the Patent Office in Washington, D. C. Respondent also makes the point that when the patent was issued in 1951 it was issued in petitioner’s name and has never since been assigned to the trusts by petitioner. But this did not make petitioner the owner of the patent. As between petitioner and the trustees, the ownership of the patent after it was issued rested in the trustees by virtue of the assignment acknowledged on February 1, 1944. Our next consideration is whether, under the Clifford doctrine, the income of the trusts is taxable to petitioner under section 22 (a). Control and the duration of the trusts are the important factors in determining this question. Stanback v. Robertson, (C. A. 4, 1950) 183 F. 2d 889. Cf. T. M. Stanback, 27 T. C. 1. Respondent contends that petitioner in substance never parted with control. He argues that the nonexclusive license granted to petitioner by the trustees at the time the trusts were created, together with the borrowings made by petitioner from the beneficiaries, makes it clear that the trusts were “mere conduits and shams, having no substance for tax purposes.” We do not agree. We have previously held herein that petitioner made a valid assignment and delivery of the patent application to the trustees. This assignment was irrevocable. The trustees were independent. The trusts were not short-term trusts but were to continue until the youngest child reached the age of 21 years, at which time the trusts could be terminated by any or all of the beneficiaries. Upon such termination, the trust estate, under paragraph Eleventh of the instrument, “shall be turned over to and become vested in the beneficiary thereof, to have and to hold the same in his own right, his heirs and assigns forever.” Petitioner retained no power to change the beneficiaries or to direct the accumulation or withholding of income or to change trustees. He had no control over the investment policy and retained no reversion-ary interest. The trusts were and are today valid trusts under the laws of the State of New York. Petitioner, in creating the trusts, changed his economic status as far as patent application No. 510,229 was concerned. He was no longer the owner of such property and should not be taxed on the income thereafter derived therefrom. Jones v. Norris, (C. A. 10, 1941) 122 F. 2d 6; United States v. Morss, (C. A. 1, 1947) 159 F. 2d 142; L. M. Fischer, 14 T. C. 792. This brings us to respondent’s so-called alternative contention that petitioner is not entitled to deduct, under section 23 (a) (1) (A) [3] the royalties that accrued under the 1944 license agreement with the trustees. He argues that the royalty payments were not ordinary and necessary; that they were not required as a condition to the continued use of the property; that they had no business purpose; that petitioner had title and equity in the property; and that the entire transaction was without substance. Much of this argument is repetitious of that made in connection with the three grounds already considered. The principal point here is whether the royalties petitioner agreed to pay were excessive for, as the court in Limericks, Inc. v. Commissioner, (C. A. 5, 1948) 165 F. 2d 483, said, “rentals or other payments for the use of property which are excessive in amount, taking into consideration all the facts of the particular case, do not constitute ordinary and necessary business expenses, or payments required to be made as a condition to the continued use of the property” under section 23 (a) (1) (A) of the 1939 Code. In our findings, we have found as a fact that, based upon the facts and circumstances which existed at the time the agreement was entered into, the rate agreed upon was reasonable and was not excessive. At that time it was expected that production of the decade would be in the thousands annually as petitioner was selling them at $100 per decade, whereas his competitors were selling at a price of between $200 and $300 a decade. The agreement which the trustees made with the American Totalisator Company on October 25, 1945, was even more favorable from the trustees’ standpoint than the agreement with petitioner. There the effective rate of royalties for the production of each decade amounted to about $256 per decade. It is true that later in 1948 when the corporation was forced to reduce the selling price of the decade from $100 to about $45 the trustees were persuaded to reduce the royalty rate by about one-half. But this was under facts and circumstances which were entirely different from those that existed in January 1944. We hold that the payments were not excessive and that petitioner is entitled to the royalty deductions claimed under section 23 (a) (1) (A), supra. Skemp v. Commissioner, (C. A. 7, 1948) 168 F. 2d 598, reversing 8 T. C. 415; Brown v. Commissioner, (C. A. 3, 1950) 180 F. 2d 926, reversing 12 T. C. 1095, certiorari denied 340 U. S. 814; and Albert T. Felix, 21 T. C. 794, where this Court decided to follow the Skemp and Brown decisions. At the trial, counsel for petitioner conceded “that the income of the trust accruing prior to whatever date is determined as being the date that this instrument was actually executed is properly taxable to Petitioner and not to the trust.” We have held that the trust instrument was executed on February 1,1944. The income accruing to the trusts for the first quarter of 1944 amounted to $1,650. We hold that one-third of this amount, or $550, is taxable to petitioner and not to the trusts. 2. Respondent in his deficiency notice disallowed deductions claimed by petitioner in his returns for 1945 and 1946 for “Interest on business indebtedness” in the respective amounts of $1,113.58 and $1,673.33, and gave as his reasons therefor the following: (e) It is held that no deduction is allowable-under section 23 (a) (1) (A) and section 24 (c) of the Internal Revenue Code for interest on alleged loans from Doris T. Potter, Lois T. Potter and John T. Potter, Jr. Petitioner concedes he has not met his burden on interest owing to Doris but contends that he “paid” interest to his children in 1945 and 1946 in the respective amounts of $726.83 and $1,323.33 and that these amounts are deductible under section 23 (b) as “interest paid or accrued within the taxable year on indebtedness.” Respondent contends that (1) the indebtedness was not bona fide, (2) that the interest was not “paid” within the taxable year, and (3) that “accrued” interest would not be deductible under section 24 (c). The material provisions of the 1939 Code are in the margin.[4] In view of our holding on the main issue, we hold that the indebtedness in question was a bona fide indebtedness incurred in petitioner’s business. During 1945 and 1946, petitioner paid on behalf of his children their Federal and State income taxes in the total amount of $2,088 for 1945 and $2,370.06 for 1946. These amounts were treated on the books of the children as “Advances — J. T. Potter.” At the end of each year, interest in the respective amounts of $726.83 and $1,323.33 had accrued on the existing indebtedness. These accrued amounts were at the close of each year then offset against the advances petitioner had made earlier in the year. We have found as a fact and so hold that the amounts of $726.83 and $1,323.33 were paid within the respective years 1945 and 1946, and are deductible under section 23 (b), supra.' In view of this holding, we need not consider section 24 (c), relied upon by respondent, as that section deals only with “unpaid” items. 3. In the notice of deficiency, respondent included as additional income to petitioner in 1945 and 1946, under section 22 (a), interest on Government bonds in the amounts of $191 and $625, respectively. These were the bonds petitioner purchased in 1945 at a cost of $25,-325.99 which he delivered to the trusts in payment of royalties. In view of our holding on the main issue, we hold that the respondent erred in including the above-mentioned interest in petitioner’s income. 4. Under the fourth issue, petitioner testified that he left the responsibility of making out his tax returns entirely to Horn. We have found as a fact that he did, but we do not think this is sufficient proof to show that the failure to file a declaration of estimated tax for the year 1946 was “due to reasonable cause and not to willful neglect” as that phrase appears in section 294 (d) (1) (A) of the 1939 Code. Petitioner contends, however, that we should consider as additional proof the statements made in a protest which he filed with the respondent while the case was being considered by the respondent prior to the mailing of the deficiency notice. The protest was prepared by Horn and was sworn to by both petitioner and Horn. It was admitted in evidence before this Court for the purpose of showing that some of Horn’s testimony before us regarding the trusts was contrary to what was said in the protest. It was not admitted in evidence for the purpose of proving any facts relating to the present issue. We hold, therefore, that the respondent did not err in determining the additions to the tax under section 294 (d) (1) (A) and (d) (2) of the 1939 Code. Rene R. Bouche, 18 T. C. 144, taxpayer’s appeal to C. A. 2 dismissed (nolle pros.); Sidney V. LeVine, 24 T. C. 147, 157; Walter M. Joyce, 25 T. C. 13; Howard M. Fischer, 25 T. C. 102; John Adrian Cooper, 25 T. C. 894; G. E. Fuller, 20 T. C. 308, 316; and Harry Hartley, 23 T. C. 353, 360. Decision will be entered u/nder Rule 50. Sec. 47. Assignments of patents and applications; evidence of execution. Every application for patent or patent or any interest therein shall be assignable in law by an instrument in writing, and the applicant or patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent or patent to the whole or any specified part of the United States. An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice unless it is recorded in the Patent Oflice within three months from the date thereof or prior to such subsequent purchase or mortgage. If any such assignment, grant, or conveyance of any application for patent or patent shall be acknowledged before any notary public of the several States or Territories or the District of Columbia, or any commissioner of any court of the United States for any district or Territory, or before any secretary of legation or consular officer authorized to administer oaths or perform notarial acts under section 1203 of Title 22, the certificate of such acknowledgment, under the hand and official seal of such notary or other officer, shall be prima facie evidence of the execution of such assignment, grant, or conveyance. R. S. § 4898 ; Mar. 3, 1897, c. 391, § 5, 29 Stat 693; Feb. 18, 1922, c. 58, § 6, 42 Stat. 391; Ang. 18, 1941, c. 370, 55 Stat 634. SEC. 23. deductions PROM GROSS INCOME. In computing net income tliere shall be allowed as deductions: (a) Expenses.. — ■ (1) Tuaph or business expenses.— (A) In General. — All the ordinary and necessary expenses paid or Incurred during the taxable year in carrying on any trade or business, Including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : [[Image here]] (b) Interest. — All interest paid or accrued within the taxable year on indebtedness * * * SEC. 24. ITEMS NOT DEDUCTIBLE. (b) Losses From Sales ok Exchanges ok Property.— (1) Losses disallowed. — In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or Indirectly— (A) Between members of a family, as defined in paragraph (2) (D) ; [[Image here]] (2) Stock ownership, family, and partnership rule. — For the purposes of determining, in applying paragraph (1), the ownership of stock— [[Image here]] (D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants ; and * * * * * * * (c) Unpaid Expenses and Interest. — In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued— (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends: and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).