ALDEN B. OAKES AND ANN L. OAKES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 494-64.  Filed July 6, 1965.

*Eugene H. Fryman*, for the petitioners.
*Richard M. Schwartz*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined the following deficiencies in the income tax of petitioners:

| Taxable year | Deficiency |
|---|---|
| 1959 | $825.46 |
| 1960 | 75.46 |
| 1961 | 832.38 |

The only issue for decision is whether payments made in these years by petitioner, Alden B. Oakes, to a trust as rental for a medical building are deductible as ordinary and necessary business expenses under the provisions of section 162(a)(3).[1]

All of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The facts necessary to our inquiry are set out below.

Alden B. Oakes and Ann L. Oakes (hereafter sometimes called petitioners) are husband and wife residing at R.R. No. 2, Cook Road, Lucasville, Ohio. For the taxable years 1959, 1960, and 1961 they reported income on the cash basis and filed their joint Federal income tax returns with the district director of internal revenue, Cincinnati, Ohio.

Alden B. Oakes is a licensed physician who practices medicine in Portsmouth, Ohio. His wife, Ann L. Oakes, is a housewife who devotes her entire time to raising their four children and taking care of their home.

On July 3, 1952, petitioners jointly purchased a lot at the corner of 24th Street and Scioto Trail in Portsmouth. In 1953 and 1954 they had a building constructed on a portion of the lot at a cost of $23,384.21. In order to finance its construction the petitioners obtained a loan from the Security National Bank of Portsmouth in the amount of $18,000. This construction mortgage was completely satisfied in 1956.

From the time the building was completed until now, Alden Oakes has used the building and medical equipment therein as a medical office in the practice of his profession.

On December 31, 1956, the petitioners, as grantors, and the Security Central National Bank of Portsmouth, as trustee, signed a trust agreement, which provides as follows:

1. The Grantors, in consideration of the mutual covenants herein contained and the sum of $1.00 and other valuable considerations to them in hand paid

---

[1] Code sections cited herein relate to the Internal Revenue Code of 1954.

by Trustee, the receipt whereof is hereby acknowledged, have granted, bargained, sold and assigned the following described premises:

Situate in the State of Ohio, County of Scioto and City of Portsmouth. Being the north 45 feet of Lot No. 43 in the Riverview Suburban Addition to said City; beginning at the northwest corner of said Lot No. 43 at the intersection of Chillicothe Street and Briggs Avenue (now 24th Street); thence in an easterly direction with the north line of said Lot No. 43 to the northeast corner of said lot and to an alley in the rear; thence in a southerly direction with the east line of said lot and the west line of said alley 45 feet to a point; thence in a westerly direction parallel with the north line of said lot to a point in the west line of said lot and the east line of Chillicothe Street; thence in a northerly direction with the west line of said lot and the east line of Chillicothe Street 45 feet to the place of beginning.

Being the same premises conveyed to Alden B. Oakes and Ann Oakes by Roger A. Selby and Louise W. Selby by deed dated July 3, 1952, recorded in Vol. 402, page 48, Scioto County, Ohio, Record of Deeds.

Except that part of said premises conveyed by Alden B. Oakes and Ann Oakes to Silena J. McAfee by deed dated June 8, 1954, and recorded in Vol. 427, page 400, Scioto County, Ohio, Record of Deeds, said exception being more particularly described as follows:

Beginning at an iron pin in the northwest corner of Lot No. 43 in the Riverview Suburban Addition to the City of Portsmouth, said iron pin being at the southeast corner of Scioto Trail and 24th Street; thence in an easterly direction with the north line of said lot and the south line of Briggs Avenue (now 24th Street) 61.67 feet to an iron pin; thence in a southerly direction parallel to and four feet west of a concrete block building, 45 feet to an iron pin; thence in a westerly direction parallel to 24th Street 62.83 feet to an iron pin in the east line of Scioto Trail; thence in a northerly direction with the east line of Scioto Trail 45 feet to the place of beginning, containing 2,779 sq. ft.

to Trustee for the purposes hereinafter contained.

2. This Trust shall continue for a period of eleven (11) years, beginning January 1, 1957, and ending December 31, 1967.

3. The Trustee shall hold, manage and protect the Trust Estate in accordance with its best judgment and discretion, and shall have every power and authority over the Trust Estate that it would have as an individual who was the absolute owner thereof. Trustee shall collect the income therefrom and distribute the same annually in the following proportions to Grantors' children:

|  | Percent |
|---|---|
| Alden Oakes, Jr | 30 |
| John Oakes | 26 |
| Suzanne Oakes | 22 |
| Jeffrey Oakes | 22 |

or, in its discretion, accumulate said income to the credit of Grantors' said children in the above proportions. In such event, Trustee is authorized to invest said income as it, in its uncontrolled discretion, deems advisable, although said investment or investments may not be of the character of investments permitted [sic] by law.

4. In making distribution of income to any minor, Trustee may make payments directly to such minor, or to his guardian, or parent and natural guardian, and the Trustee shall not be chargeable or accountable for any amount so paid.

5. If any beneficiary hereunder should die before attaining the age of 21 years, the Trustee shall pay over his unexpended or accumulated income to his estate.

6. The Grantors shall have no power to amend, modify or revoke this agreement.

7. The Trustee may resign by giving 15 days' written notice of its intention to do so to the Grantors, said resignation to become effective upon settlement of the Trustee's accounts. In such event, the Grantors reserve the power to appoint a successor trustee. If the Grantors fail to appoint a successor within fifteen days after receiving said notice, the Trustee hereunder may make such appointment. In case any successor shall at any time be appointed, such successor trustee shall be vested with all the duties, rights, titles and powers, whether discretionary or otherwise, of the orginal Trustee.

8. The Grantors may at any time during the minority of the beneficiaries, or from time to time, approve and settle the accounts of the Trustee, and any such settlement shall be binding and conclusive upon all persons interested in this Trust; however, Trustee may, if it so desires, have its account settled by a court of competent jurisdiction.

9. Trustee shall be allowed a reasonable compensation for its services rendered hereunder.

10. This agreement shall be construed, and the Trust hereby created shall be administered, pursuant to the laws of the State of Ohio.

11. At the expiration of the Trust herein created, the trust assets shall be transferred and delivered to the Grantors, or in the event of his or her prior death, in accordance with the order of distribution of the Probate Court having jurisdiction over his or her estate.

12. It is the intention of the Grantors to create a short term trust, commonly known as a Clifford Trust, for the benefit of their minor children, and if any provision or article herein shall be determined to violate the provisions of the Internal Revenue Code of 1954, Subchapter J, Part I, Subpart E, Sections 671 et seq., so as to cause the income of this Trust to be taxable to Grantors, then said provision or article shall not be operative but shall be void and of no effect. In that event, all other provisions or articles herein shall remain in full force and effect and shall not thereby be affected.

The property described in the trust agreement is the land and medical building.

On January 2, 1957, the Security Central National Bank of Portsmouth, as trustee and lessor, leased the building to Alden B. Oakes, as lessee, for a term of 11 years beginning January 1, 1957, at an annual rental of $1,500. The lease further provides:

The said lessee does hereby covenant and agree with said lessor, as follows:

1. That the lessee will pay said rent at the time and place in the manner aforesaid.

2. That the lessee will pay all charges for all utilities, including water and sewage charges.

3. That the lessee will keep said premises insured at his own expense.

4. That the lessee will pay all taxes and assessments on said premises.

5. Lessee will keep said premises in good repair and maintain the same, both inside and outside.

The lessor does hereby covenant and agree with the said lessee, as follows:

1. That lessee may make alterations or additions in and to said premises without the consent of the lessor, at lessee's expense.

2. That lessee paying the rents and keeping and performing the covenants herein contained on his part to be kept and performed, said lessee shall peaceably and quietly hold, occupy and enjoy said premises during said term without

any let, hindrance or molestation of said lessor, or any person or persons lawfully claiming under said lessor.

It is mutually covenanted and agreed by and between said lessor and said lessee that, as security for the said rents to be paid and the covenants to be performed by said lessee, a lien is hereby reserved upon the premises hereby leased, and the interest of said lessee in and to the same, in favor of said lessor, prior and superior to any and all other liens thereupon whatsoever.

By a deed signed on April 28, 1959, and recorded on April 30, 1959, in Scioto County, Ohio, Alden B. Oakes bargained, sold, and conveyed to Ann Oakes, her heirs and assigns, his future interest in the real property described in the trust agreement of December 31, 1956.

On May 5, 1959, the judge of the Probate Court of Scioto County, Ohio, signed a letter of guardianship appointing Ann L. Oakes as guardian of the property of her four minor children, subject to the responsibility of accounting to the Probate Court for the administration of the children's estate.

On April 26, 1960, Ann L. Oakes delivered to the Security Central National Bank cash of $2,724.34 to be held for the benefit of her children and requested that the bank control and manage it as her agent.

The Security Central National Bank, an independent trustee, filed U.S. Fiduciary Income Tax Returns on behalf of the Alden B. and Ann Oakes Trust for the years 1959, 1960, and 1961 with the district director of internal revenue, Cincinnati, Ohio, reporting the rent paid by Alden Oakes as gross income.

Alden B. Oakes paid to the bank, as trustee, the sums of $2,250 in 1959, $750 in 1960, and $1,500 in 1961 as rent for the medical building. The amounts paid were reasonable. In their tax returns for these years the petitioner claimed business expense deductions for the amounts paid as rent. Respondent disallowed the rental expense deduction in his notice of deficiency dated November 15, 1963, because—

It is held that the claimed deduction of * * * [amount stated] for rent paid to a trust, created by you, for the use of the trust property under a leaseback agreement is not allowable since the trust and leaseback agreement are merely a means of assigning income to family members, and is not deductible under any section of the code.

Again, as in *I. L. Van Zandt*, 40 T.C. 824 (1963), affd. 341 F. 2d 440 (C.A. 5, 1965), we have before us the narrow question of rental deductions, and not *to whom* trust income is taxable. Petitioners contend that the rental payments made to the trust during the years in issue fall squarely within the provisions of section 162(a)(3)[2] and, therefore,

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

are deductible as ordinary and necessary expenses paid in carrying on Alden Oakes' medical practice. They rely on such decisions as *Skemp* v. *Commissioner*, 168 F. 2d 598 (C.A. 7, 1948), reversing 8 T.C. 415 (1947) ; *Brown* v. *Commissioner*, 180 F. 2d 926 (C.A. 3, 1950), reversing 12 T.C. 1095 (1949) ; and *Albert T. Felix*, 21 T.C. 794 (1954). See also *John T. Potter*, 27 T.C. 200 (1956).

Respondent, relying on the *Van Zandt* case, argues that the rental payments made to the trust do not constitute ordinary and necessary business expenses for several reasons, namely: (1) The transfer of the real property to the trust merely resulted in a reallocation of income among the family members because Alden Oakes did not divest himself of control and ownership so as to warrant an allowance of the claimed rental deduction; (2) Alden Oakes retained the prohibited "equity" in the property under section 162(a) (3) ; and (3) he initiated the whole transaction merely to reduce his taxes, thus serving no business purpose but only the creation of artificial rentals.

While the line of demarcation might be thin between the *Skemp*, *Brown*, and *Felix* cases on one side and *Van Zandt* on the other, a difference nevertheless exists and we have recognized it. One of the pivotal factors is the *actual independence* of the trustee. Here, unlike *Van Zandt* where control over the trusts was always in the hands of the doctor as sole trustee, the control and ownership passed from petitioners to the Security Central National Bank, an independent trustee. Certainly this is strongly indicative of the *bona fides* of the transfer. Indeed, in other cases upholding the leaseback deduction, the "independent" trustees have consisted of the donor's attorney, *Brown* v. *Commissioner, supra*, as well as his wife, father, and accountant, *John T. Potter, supra*. We think the petitioners have brought themselves within the ambit of our decision in *Albert T. Felix, supra*, where we said (p. 804) :

In the instant proceeding the petitioners, by their trust deed, irrevocably divested themselves of the property transferred to the trust created for the benefit of their children. The trustee was a corporate trustee, and we find substantial evidence to justify the inference that the trustee did act independently and in the best interest of the beneficiaries of the trust. We think the respondent places undue emphasis upon the exculpatory provision of the trust instrument. Such a provision is not uncommon where the trustee is not confined to legal investments but is given broad powers of investment in the administration of the trust. We hold that the trust was valid and is to be recognized as such. The sale and lease arrangements between the trustee and the petitioners appear to have been entered into in good faith. The equipment was sold to the trust and leased back at prices fixed by the O.P.A. and so must be regarded as fair and reasonable. No injury resulted either to the trust estate or the business carried on by the petitioners. Under such circumstances the sale and lease arrangements are to be regarded as bona fide transactions. The rentals paid to the trustee are found to be reasonable in amount. We think the case at bar is not readily distinguishable from the *Skemp* and *Brown* cases, *supra*. Accordingly, we adopt the view

expressed by the appellate courts and hold that the rental payments constitute ordinary and necessary business expenses of the respective partnerships and are deductible under the provisions of section 23(a)(1)(A) of the Internal Revenue Code in the taxable years in which paid. Therefore, the respondent erred in taxing to the petitioners as income the rentals paid to the trustee in the taxable years in question.

Moreover, the Court of Appeals for the Fifth Circuit, in affirming our opinion in the *Van Zandt* case, recognized the distinction where there is an independent trustee. It stated:

> In view of the fact that at the very moment that the property here was conveyed to the trustee, the trustee became obligated to convey it back under lease to the original transferor, it seems clear that we do not have the normal relationship that exists when an "independent" trust is created, and recognized fully for tax purposes, because the trustee of such trusts is required to handle the affairs of the trust under the strict principles of a fiduciary in the management of the property. * * *

Still another distinguishing factor in this case, which we have taken into consideration in weighing the *bona fides* of the transfer of the real property to the trust, is that Alden Oakes has relinquished, rather than retained, his reversionary interest.

Before the creation of the Clifford trust Ann Oakes had a one-half undivided interest in the property. After the execution of the trust instrument, the trust had an 11-year term interest and each of the petitioners had a one-half undivided interest in the remainder. After the conveyance of his reversionary interest to his wife on April 28, 1959, Alden Oakes had no interest, the trust had a term interest of 104 months, and the wife had the entire remainder interest. If all of the transactions had been consummated at one time there would have been a complete divestiture by the husband in favor of his wife and children. *Skemp* v. *Commissioner, supra,* and *Brown* v. *Commissioner, supra.* Just because a series of transactions was used to accomplish the same end does not alter the ultimate tax result.

One of the reasons why respondent asserts Alden Oakes did not divest himself of sufficient control and ownership over the property is that upon termination of the trust the property must be returned to the grantors. This argument disregards two pertinent facts, viz, the preexisting and continuing interest of the wife and the transfer of the doctor's remainder interest to his wife. Surely, after April 28, 1959, Alden Oakes had neither a present nor a remainder interest in the trust property. His wife alone was then left the power to eventually dispose of the trust corpus.

Neither are we persuaded by respondent's contention that the doctor was not a "bona fide" lessee of the property. There is a paucity of evidence to support such contention. To be sure, net leases of this type are not uncommon in the business community. It strikes us as

being, in both form and substance, consistent with normal business practice.

Respondent further maintains that the power to appoint a successor trustee, if the bank should resign as trustee, impairs the independence of the present trustee. This argument is unconvincing for two reasons: (1) It imputes to the taxable years in issue an event which has not occurred; and (2) it is clear, when the trust agreement is interpreted in its entirety, that the exercise of a prohibited power would be contrary to paragraph 12 of the trust agreement.

Another segment of respondent's argument is that the conveyance of April 28, 1959, by Oakes to his wife lacks substance and does not reflect the economic realities of the situation. Respondent says the consideration of $100 was inadequate. Yet he ignores that "other goods and valuable considerations" include love and affection, prior services of his wife, and other personal and business motivations that might have caused him to make the gift of his remainder interest in the trust property to her. Certainly a reasonable interpretation of the stipulated evidence leads us to conclude that Alden Oakes desired for personal and business reasons to give his wife his remainder interest in the real estate. Since the property has substantial value, there is no question in our minds that the deed of April 28, 1959, was economically real.

We do not agree with respondent's second contention that Alden Oakes retained a prohibited "equity" in the property conveyed to the trust. Section 162(a)(3) provides that rentals are deductible only when paid for use of property "to which the taxpayer has not taken or is not taking title or in which he has no equity." In legal parlance one has an "equity" in property when he has a right of redemption, a reversionary interest, a right to specific performance, or in general any right respecting property which traditionally would have been enforceable by means of an equitable remedy. Oakes relinquished his reversionary (future) interest in the trust on April 28, 1959. Clearly he had no "equity" in the property after that date and during most of the time covered by the years in issue. Cf. *Hall* v. *United States*, 208 F. Supp. 584 (N.D.N.Y. 1962), where the Court held, as an alternative basis for its decision, that the retention by the grantors of the reversionary interest constituted an "equity" in the property, requiring denial of the rental deduction under section 162(a)(3); see also *Kirschenmann* v. *Westover*, 225 F. 2d 69 (C.A. 9, 1955) (concurring opinion); and *Burroughs Corporation*, 33 T.C. 389 (1959). Nor are we persuaded by the fact that the petitioners retained, in paragraph 8 of the trust agreement, the power to "approve and settle the account of the Trustee." This is not the type of "equity" contemplated by section 162(a)(3). Furthermore, paragraph 8 also gives

the trustee the power to "have its account settled by a court of competent jurisdiction." In this connection we cannot blind ourselves to the independence of the bank as trustee, the letters of guardianship, and the strict provisions of the Ohio law with respect to the approval by the Probate Court of the accounts of the guardian and the trustee. See secs. 2111.14 and 2111.46, Ohio Rev. Code.

We likewise see no merit to respondent's third point. Tax advantages per se are not outlawed. Ordinarily, any taxpayer may arrange his affairs so as to minimize his tax liabilities by means which the law permits. *United States* v. *Isham*, 84 U.S. 496 (1873) ; *Gregory* v. *Helvering*, 293 U.S. 465 (1935) ; *Commissioner* v. *Tower*, 327 U.S. 280 (1946) ; and *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950). Irrespective of what we said regarding business purpose in our *Van Zandt* opinion, we think that where, as here, a grantor gives business property to a valid irrevocable trust over which he retains no control and then leases it back, it is not necessary for us to inquire as to whether there was a business reason for making the gift. Admittedly there was none. Under such circumstances the test of business necessity should be made by viewing the situation as it exists after the gift is made. At that point, since Alden Oakes needed a building for practicing medicine, he agreed to rent the property from the trustee for a reasonable amount. Consequently, we believe there is a sound basis for holding that the rent paid by Oakes was, in terms of section 162, both "ordinary and necessary" and "required to be made as a condition to continued use * * * of property." As the Court of Appeals emphasized in *Van Zandt*, what is good business purpose "ultimately depends on the factual evaluation of the particular case." The facts in this case favor petitioners.

Accordingly, in the light of the particular facts and circumstances here involved, we conclude that the rental payments are deductible as ordinary and necessary business expenses.

*Decision will be entered for the petitioners.*