RALPH L. HUMPHREY AND EVA M. HUMPHREY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87517, 91584. Filed October 24, 1962.

*John E. Boyer, Esq.*, for the petitioners.
*Merrill R. Talpers, Esq.*, for the respondent.

### OPINION.

FAY, *Judge:* In these consolidated proceedings, respondent determined deficiencies in income tax of $3,001.92 and $4,017.47 for the calendar years 1957 and 1958, respectively.

The only issues for decision are:

(1) Whether the petitioners, the grantors of a trust created in 1957, are taxable on the income of said trust for the years 1957 and 1958.

(2) Whether the petitioner Ralph L. Humphrey received dividend income in 1957 in the amount of $2,000 as a result of the transfer of his stock in Humphrey Awnings, Inc., to Humphrey Products, Inc.

All of the facts have been stipulated and are found accordingly.

During the years 1957 and 1958 the petitioners resided in Wichita, Kansas, and filed their income tax returns with the district director of internal revenue at Wichita, Kansas.

On July 1, 1957, the petitioners entered into a trust agreement which provided as follows:

THIS AGREEMENT, entered into by and between Ralph L. Humphrey and Eva May Humphrey, husband and wife, hereinafter known as Grantors, and Loren

R. Humphrey, Frank L. Humphrey and Ralph L. Humphrey, hereinafter known as Trustees;

WITNESSETH:

WHEREAS, the Grantors herein are desirous of creating a trust and may from date hereof grant to the Trustees both real and personal property, or either, for the use and benefit of the following: Charles Worth Humphrey and William Stephen Humphrey to be known as beneficiaries of the trust. It is understood and agreed that the property so conveyed herein shall be received by the Trustees and held by them for the use and benefit of the above named beneficiaries; that the Trustees shall receive all property herein granted and shall be privileged to receive the income therefrom, invest and reinvest such income and shall be privileged to make sale or sales of all of such property for the trust and make conveyances of the same on such terms and conditions as in their judgment shall be for the best interest of the beneficiaries.

Our Trustees, in addition to the powers herein given, shall be privileged to assign, transfer, mortgage or hypothecate any of the assets of the trust and to do all acts necessary in the management of such property without the intervention of any court, and on such terms and conditions as our Trustees shall deem best and they shall be privileged to repair, remodel or improve any or all of the assets of the trust estate and in so doing shall incure [sic] no liability to our beneficiaries under the terms of this trust on the account of errors or mistakes in judgment.

From the earnings of the property of this trust our Trustees are specifically authorized and empowered to either reinvest such earnings or to expend from such earnings or principal of the trust, if necessary, such sums as in their judgment shall be necessary for the health, general welfare and education of any of our beneficiaries, in such amounts and at such periods as in their judgment shall be for the best interest of the beneficiaries of this trust.

This trust shall continue until July 1, 1972, and until such date no part of the corpus of the trust property, or any of the earnings realized therefrom shall at any time be a part of the assets of the Grantors and the Grantors shall at no time acquire any interest in earnings from the trust property or the proceeds therefrom, but after such date all trust property remaining in the hands of the Trustees may, at the option of the Grantors, revert to the Grantors.

It is understood, and as a condition of this trust, that no beneficiary herein named shall have any right, at any time during the existence of this trust, to assign, pledge or sell the beneficial interest of such beneficiary, and that none of the principal or earnings therefrom shall at any time be subject to the debts or obligations of any beneficiary.

In the event of death, disability or removal from the state of Kansas of one or more Trustee the remaining trustees shall, in thirty (30) days after the occurence [sic] of such event, select a successor agreeable to the remaining two Trustees, or in the event of the disability, removal or death of all trustees, succeeding trustees shall be appointed by Division No. 1 of the District Court of Sedgwick County, Kansas.

The Trustees herein are further authorized to enter into partnerships at their choosing, to incorporate the assets of the trust, or to handle the same in any business form or style that suits their convenience and appears to be for the best interest of the trust estate.

Loren R. Humphrey was the brother of petitioner Ralph L. Humphrey (sometimes hereinafter referred to as Ralph), and Frank L. Humphrey was Ralph's father. The beneficiaries of the trust, Charles

Worth Humphrey and William Stephen Humphrey, were petitioners' children.

The corpus of the trust consisted of a one-third interest in a partnership known as the Humphrey Building Company. The Humphrey Building Company owned improved real estate.

The amount of the Humphrey Building Company's taxable income for 1957 and 1958 which is attributable to the one-third partnership interest forming the corpus of the trust and the character of such income were as follows:

| Period | Character of income | Amount |
|---|---|---|
| Jan. 1–June 30, 1957 | Dividend | $1,133.33 |
| | Other income | 2,328.43 |
| July 1–Dec. 31, 1957 | Dividend | 1,133.33 |
| | Other income | 2,335.08 |
| 1958 | Other income | 6,729.90 |

Ralph, Frank, and Loren each owned one-third of the outstanding stock of Humphrey Awnings, Inc. (hereinafter referred to as Awnings).

The outstanding stock of a corporation known as Humphrey Products, Inc. (hereinafter referred to as Products), was owned as follows:

| Shareholder | Amount of shares owned | Shareholder | Amount of shares owned |
|---|---|---|---|
| Frank L. Humphrey | 26 | Loren R. Humphrey | 177 |
| Grace Humphrey | 28 | Erma G. Humphrey | 14 |
| Ralph L. Humphrey | 181 | Lynn R. Humphrey | 14 |
| Eva M. Humphrey | 4 | Beverly Humphrey | 14 |
| Charles Worth Humphrey | 19 | Pauline R. Humphrey | 4 |
| William Stephen Humphrey | 19 | | |

Grace is the wife of Frank and the mother of Ralph and Loren. Erma, Lynn, and Beverly are children of Loren and grandchildren of Frank and Grace. Pauline is Loren's wife and the mother of Loren's children.

In July of 1957, Frank, Loren, and Ralph each transferred their 200 shares of Awnings to Products, and Products paid to each the sum of $2,000.

The transferred shares of Awnings cost Ralph $2,000.

As of the fiscal year ended July 31, 1957, both Products and Awnings had earnings and profits in excess of $6,000.

The first issue concerns the correctness of respondent's determination that (pursuant to the provisions of section 677(a)(2) of the Internal Revenue Code of 1954)[1] the petitioners are to be treated as the owners of a trust created by them on July 1, 1957.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

Section 677(a)(2) provides, in effect, that the grantor shall be treated as the owner of any portion of a trust whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be held or accumulated for future distribution to the grantor.

In the case before us, the pertinent parts of the trust agreement provided that the trust was to last for 15 years; that it was for the benefit of petitioners' children; that the trustees were to be Ralph, Loren (Ralph's brother), and Frank (Ralph's father) ; that the trustees were authorized either to reinvest the income of the trust or to expend it for the benefit of petitioners' children; that during the term of the trust the petitioners were to have no interest in the corpus or the earnings of the trust; and that upon termination of the trust, all trust property [2] was to revert to the petitioners. The trust agreement contained no limitation on the extent to which the trustees could accumulate the trust's earnings, and the petitioners offered no evidence indicating that any of the trustees qualified for designation as an adverse party within the meaning of section 672(a).[3] Accordingly, pursuant to section 672(b)[4] the trustees are subject to classification as nonadverse parties.

We believe respondent's determination with respect to this issue is correct. The record discloses that the trustees, who were nonadverse parties, could in their unfettered discretion accumulate the earnings of the trust during the entire term of the trust, and that upon termination of the trust the petitioners could receive the trust property consisting of corpus and accumulated income. Such circumstances as they relate to the accumulated income require the application of section 677(a)(2).

The petitioners contend, however, that section 677(a)(2) is rendered inapplicable in the instant case by reason of the exception con-

---

[2] The term "trust property" is not expressly defined in the trust agreement. It would appear, however, and we so hold, that in view of the agreement's reference to corpus as being a part of the trust property and the agreement's reference to "all trust property" in providing for the disposition of the trust property at the termination of the trust, that the grantors intended the term "trust property" to encompass corpus as well as income. This view is given further support by reason of the fact that no separate provision was contained in the agreement for the disposition of accumulated earnings upon termination of the trust.

[3] SEC. 672. DEFINITIONS AND RULES.

(a) ADVERSE PARTY.—For purposes of this subpart, the term "adverse party" means any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. A person having a general power of appointment over the trust property shall be deemed to have a beneficial interest in the trust.

[4] (b) NONADVERSE PARTY.—For purpose of this subpart, the term "nonadverse party" means any person who is not an adverse party.

tained in the last sentence of section 677(a). This sentence reads as follows:

This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished.

Petitioners reason that, since the trust agreement provided that the grantors were to have no interest in the earnings of the trust during the initial period of 15 years, the exception stated in section 677(a) is operative in this case.

The petitioners' resort to the exception contained in section 677(a) is debarred by the regulations. It is therein provided that:

The exception set forth in the last sentence of section 677(a) does not apply merely because the grantor must await the expiration of a period of time before he can receive or exercise discretion over previously accumulated income of the trust, even though the period is such that the grantor would not be treated as an owner under section 673 if a reversionary interest were involved. Thus, if income (including capital gains) of a trust is to be accumulated for 10 years and then will be, or at the discretion of the grantor may be, distributed to the grantor, the grantor is treated as the owner of the trust from its inception. [Sec. 1.677(a)-1, Income Tax Regs.]

We believe the respondent's regulation is a reasonable and permissible construction of section 677(a). See also Rev. Rul. 57–363, 1957–2 C.B. 326.

The second issue in these proceedings is whether Ralph received dividend income in 1957 as the result of the transfer of his stock in Awnings to Products.

Prior to July of 1957, Ralph, his brother (Loren), and his father (Frank) each owned one-third of the stock of Awnings. In July of 1957, the three stockholders of Awnings transferred their stock to Products, and each received the sum of $2,000. The stock of Products was owned as follows:

| Family group | Percentage of ownership |
|---|---|
| Ralph, his wife, and children | 44. 6 |
| Loren, his wife, and children | 44. 6 |
| Frank and his wife | 10. 8 |

Respondent contends that the transfer of Awnings stock to Products by petitioners constituted a redemption under section 304(a)(1)[5] and

---

[5] SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.
 (a) TREATMENT OF CERTAIN STOCK PURCHASES.—
 (1) ACQUISITION BY RELATED CORPORATION (OTHER THAN SUBSIDIARY).—For purposes of sections 302 and 303, if—
 (A) one or more persons are in control of each of two corporations, and

consequently the entire amount received by petitioners was taxable as a dividend pursuant to the rules of sections 301 and 302.[6]

---

(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,
then (unless paragraph (2) applies [Acquisition by Subsidiary]) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

\* \* \* \* \* \* \*

(b) SPECIAL RULES FOR APPLICATION OF SUBSECTION (a).—
(1) RULE FOR DETERMINATIONS UNDER SECTION 302 (b).—In the case of any acquisition of stock to which subsection (a) of this section applies, determinations as to whether the acquisition is, by reason of section 302(b), to be treated as a distribution in part or full payment in exchange for the stock shall be made by reference to the stock of the issuing corporation. In applying section 318(a) (relating to constructive ownership of stock) with respect to section 302(b) for purposes of this paragraph, section 318(a)(2) (C) shall be applied without regard to the 50 percent limitation contained therein.
(2) AMOUNT CONSTITUTING DIVIDEND.—
(A) WHERE SUBSECTION (a)(1) APPLIES.—In the case of any acquisition of stock to which paragraph (1) (and not paragraph (2)) of subsection (a) of this section applies, the determination of the amount which is a dividend shall be made solely by reference to the earnings and profits of the acquiring corporation.

\* \* \* \* \* \* \*

(c) CONTROL.—
(1) IN GENERAL.—For purposes of this section, control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock. \* \* \*
(2) CONSTRUCTIVE OWNERSHIP.—Section 318(a) (relating to the constructive ownership of stock) shall apply for purposes of determining control under paragraph (1). For purposes of the preceding sentence, section 318(a)(2)(C) shall be applied without regard to the 50 percent limitation contained therein.

[6] SEC. 301. DISTRIBUTIONS OF PROPERTY.
(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\* \* \* \* \* \* \*

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—
(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

\* \* \* \* \* \* \*

SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.
(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
(b) REDEMPTIONS TREATED AS EXCHANGES.—
(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.
(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—
(A) IN GENERAL.—Subsection (a) shall apply if the distribution is substantially disproportionate with respect to the shareholder.
(B) LIMITATION.—This paragraph shall not apply unless immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote.
(C) DEFINITIONS.—For purposes of this paragraph, the distribution is substantially disproportionate if—
(i) the ratio which the voting stock of the corporation owned by the shareholder immediately after the redemption bears to all of the voting stock of the corporation at such time,
is less than 80 percent of—
(ii) the ratio which the voting stock of the corporation owned by the shareholder immediately before the redemption bears to all of the voting stock of the corporation at such time.

Applying the constructive ownership rules of section 318(a),[7] it is apparent that Ralph, his brother, and his father were in control of both Awnings and Products. Such being the case, the payment received by Ralph as a result of the sale of his Awnings stock is transformed by section 304(a) into a distribution in redemption of his Products stock.

Although the distribution to Ralph is now classified by section 304 as one in redemption of stock, we must look to section 302(b) to ascertain the taxable status of such a distribution. A determination under section 302(b) is made by reference to the stock of the issuing corporation, which in this case is Awnings. See footnote 5, *supra*.

Under section 302(b) there are four alternative requirements for obtaining capital gain treatment with regard to a corporate redemption of stock. The parties concede that the specific requirement un-

---

For purposes of this paragraph, no distribution shall be treated as substantially disproportionate unless the shareholder's ownership of the common stock of the corporation (whether voting or nonvoting) after and before redemption also meets the 80 percent requirement of the preceding sentence. For purposes of the preceding sentence, if there is more than one class of common stock, the determinations shall be made by reference to fair market value.

(D) SERIES OF REDEMPTIONS.—This paragraph shall not apply to any redemption made pursuant to a plan the purpose or effect of which is a series of redemptions resulting in a distribution which (in the aggregate) is not substantially disproportionate with respect to the shareholder.

(3) TERMINATION OF SHAREHOLDER'S INTEREST.— * * *

(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.—* * *

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. * * *

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—

(1) IN GENERAL.—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.

(2) * * * [Not relevant to this case.]

(d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

[7] SEC. 318. CONSTRUCTIVE OWNERSHIP OF STOCK.

(a) GENERAL RULE.—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

(1) MEMBERS OF FAMILY.—

(A) IN GENERAL.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

(i) his spouse (other than a spouse who is legally separated from the individual under a decree of divorce or separate maintenance), and

(ii) his children, grandchildren, and parents.

* * * * * * *

(2) PARTNERSHIPS, ESTATES, TRUSTS, AND CORPORATIONS.—

* * * * * * *

(C) CORPORATIONS.—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly by or for any person, then—

(i) such person shall be considered as owning the stock owned, directly or indirectly, by or for that corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation; and

(ii) such corporation shall be considered as owning the stock owned, directly or indirectly, by or for that person.

der section 302(b)(4) involving stock issued by railroad corporations is not applicable to the instant case.

The first statutory requirement we will consider is set forth in section 302(b)(2) and involves a situation in which there is a substantially disproportionate redemption of stock. In order for this section to apply, the stockholder cannot own more than 50 percent of the voting stock of the corporation after the redemption, nor may the stockholder's percentage interest in the voting stock after redemption be equal to 80 percent or more of such percentage interest owned before the redemption.

In determining the ownership of stock for purposes of section 302(b)(2) the constructive ownership rules of section 318(a)(1)(A), as well as the attribution rules of section 318(a)(2)(C) without regard to the 50 percent limitation contained therein (see section 304(b)(1)), are applicable.

Prior to the redemption Ralph owned through actual and constructive ownership 66⅔ percent of the stock of Awnings, and after the redemption Ralph owned through actual and constructive ownership 55.4 percent of the stock of Awnings. Eighty percent of Ralph's ownership in Awnings prior to the redemption equaled 53.3 percent.

In view of these facts it is clear that the redemption was not substantially disproportionate as to Ralph. Following the redemption he not only owned more than 50 percent of Awnings stock, but his interest at such time was greater than 80 percent of this interest prior to the redemption.

We will consider next section 302(b)(3), wherein a stock redemption qualifies as an exchange if a shareholder's interest is completely terminated. Here again, applying the attribution rules of section 318(a)(2)(C) to the effect that stock owned by a corporation will be deemed owned by a shareholder, we find that Ralph constructively owned shares in Awnings through his ownership of Products stock. Such being the case, the redemption did not terminate all of Ralph's interest in Awnings and section 302(b)(3) is rendered inapplicable.

The last alternative to be considered is section 302(b)(1) and, as previously noted, provides, in effect, that a redemption will be treated as a distribution in part or full payment in exchange for the stock if the redemption is not essentially equivalent to a dividend. It is recognized in the case law and in the regulations that the question whether a redemption is essentially equivalent to a dividend depends on the facts and circumstances of each case. *Earle* v. *Woodlaw*, 245 F. 2d 119 (C.A. 9, 1957), certiorari denied 354 U.S. 942 (1957); *Standard Linen Service, Inc.*, 33 T.C. 1 (1959); sec. 1.302–(b), Income Tax Regs. In the present case Ralph, who owned a one-third interest in Awnings prior to July 1957, transferred that interest to Products, a corporation

in which he owned a 44.6 percent interest [8] and received the sum of $2,000.

We are obliged to consider the net effect of this transaction. *Flanagan* v. *Helvering*, 116 F. 2d 937 (C.A.D.C. 1940), affirming a Memorandum Opinion of the Board of Tax Appeals; *Ferro* v. *Commissioner*, 242 F. 2d 838 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; *Thomas Kerr*, 38 T.C. 723 (1962); and *John A. Decker*, 32 T.C. 326 (1959), affirmed per curiam 286 F. 2d 427 (C.A. 6, 1960). In making determinations under section 302(b) it is appropriate to consider the attribution rules of section 318(a). *Thomas G. Lewis*, 35 T.C. 71, 77 (1960). Applying the constructive ownership rules of this section, more particularly section 318(a)(2)(C) without regard to the 50 percent limitation contained therein, it is evident that Ralph by reason of a 44.6 percent interest in Products is the constructive owner of a 44.6 percent interest in Awnings as well. Thus, as a result of the transaction, Ralph has received the sum of $2,000 without diminution of his interest in Awnings,[9] at a time when both Awnings and Products had earnings in excess of $6,000. In the absence of any other evidence regarding the tenor of this transaction, it is the opinion of this Court that the distribution of $2,000 to Ralph by Products was essentially equivalent to a dividend.

*Decisions will be entered for the respondent.*

---

[8] The 44.6 percent represents Ralph's 181 shares and the shares owned by his wife and two children. It does not include the shares owned by Ralph's parents, Frank and Grace Humphrey.

[9] Prior to the transfer, Ralph owned a 33⅓ percent interest in Awnings; after the transfer his interest was 44.6 percent.