Estate of Joseph L. Antrim, Jr., Deceased, State-Planters Bank of Commerce and Trusts and Betty Taylor Antrim, Executors, and Betty Taylor Antrim v. Commissioner. Richard H. Cardwell, Jr., and Annie Belle T. Cardwell v. Commissioner.
Estate of Antrim v. Commissioner
Docket Nos. 649-64, 650-64.
United States Tax Court
T.C. Memo 1967-60; 1967 Tax Ct. Memo LEXIS 201; 26 T.C.M. (CCH) 320; T.C.M. (RIA) 67060; March 29, 1967
*201 Distributions in redemption of all issued and outstanding shares of preferred stock which did not result in pro rata distributions to the common stockholders held not essentially equivalent to a dividend within the meaning of sec. 302(b)(1), I.R.C. 1954. H. Brice Graves, 1003 Electric Bldg., P.O. Box 1535, Richmond, Va., for the petitioners. Hobart Richey, for the respondent. HOYT
Memorandum Findings *202 of Fact and Opinion HOYT, Judge: These proceedings involve income tax deficiencies for 1959 as follows: Estate of Joseph L. Antrim,
Jr., et al.
649-64
$7,465.31
Richard H. Cardwell, Jr.,
et al.
650-64
$1,654.73
The sole question in issue is whether the payments in 1959 in redemption of shares of preferred stock of C. W. Antrim & Sons, Inc., which were then held by Joseph L. Antrim, Jr., now deceased, whose estate is the petitioner in Docket No. 649-64, and Richard H. Cardwell, Jr., petitioner in Docket No. 650-64, were essentially equivalent to dividends under section 302(b)(1), Internal Revenue Code of 1954. Findings of Fact All of the facts have been stipulated and are incorporated herein by this reference. Some of them will be recited herein, together with other facts found from the stipulated exhibits. Joseph L. Antrim, Jr., now deceased, and Richard H. Cardwell, Jr., and Annie Belle T. Cardwell were all residents of Virginia in 1959 and filed joint returns for that year with the district director of internal revenue at Richmond. They will be referred to sometimes hereinafter as the petitioners in these proceedings. Betty *203 Taylor Antrim is a party to these proceedings only by reason of having filed a joint return with her husband, Joseph L. Antrim, Jr., who died on July 2, 1964, subsequent to the filing of the petitions herein and his estate has been substituted as a party. The cases have been consolidated for purposes of trial, briefing and opinion. The preferred shares with which we are here concerned were issued by C. W. Antrim & Sons, Inc., a corporation organized under the laws of Virginia in 1952 as the successor of a partnership trading under the same name. C. W. Antrim & Sons, Inc., will be referred to sometimes hereinafter as the corporation and its predecessor as the partnership. The principal business of both the partnership and the corporation was the roasting, grinding and sale of coffee, and the purchase and sale of tea and spices. On June 2, 1952, the capital accounts of the partners in the partnership, after eliminating a relatively small amount of cash that was not to be transferred to the corporation, were as follows: Hugh Antrim (Deceased)
$256,000
Joseph L. Antrim, Jr. (Petitioner
in Docket No. 649-64)
31,850
Richard H. Cardwell, Jr. (Petitioner
in Docket No. 650-64)
31,850
Total
$319,700
*204 The corporation was authorized by its certificate of incorporation to issue 20,000 shares of common stock having a par value of $10 per share and 800 shares of 6 percent cumulative, nonvoting preferred stock. On June 2, 1952, Joseph L. Antrim, Jr., and Richard H. Cardwell, Jr., each purchased 15 shares of the common stock of the corporation for $150. On the same day the net assets of the partnership other than a relatively small amount of cash were transferred to the corporation in exchange for common stock, 6 percent cumulative, nonvoting preferred stock, and 5 percent promissory notes, which were distributed to the partners giving each an interest in the corporation as follows: Common Stock
Preferred Stock
Amount
Shares
Amount
Shares
Notes
Executors of the Estate of Hugh Antrim
$64,000
6,400
$64,000
640
$128,000
Joseph L. Antrim, Jr.
8,000
800
8,000
80
16,000
Richard H. Cardwell, Jr.
8,000
800
8,000
80
16,000
Total
$80,000
8,000
$80,000
800
$160,000
Hugh Antrim had died in August 1951, and the following year on the transfer of the net assets of the partnership to the corporation, the corporate stocks and notes *205 to which he otherwise would have been entitled were issued to his estate. At the settlement of this estate before 1959, the common stock in the corporation held by the estate was distributed to Joseph L. Antrim, Jr. (petitioner in Docket No. 649-64), the notes issued by the corporation were distributed to Hugh Antrim's widow and the 640 shares of preferred stock were distributed to Nora Lee Antrim, the sister of Joseph L. Antrim, Jr. As a result, the distribution of the stock and notes among the various holders, was as follows: Common Stock
Preferred Stock
Amount
Shares
Amount
Shares
Notes
Joseph L. Antrim, Jr.
$72,000
7,200
$ 8,000
80
$ 16,000
Richard H. Cardwell, Jr.
8,000
800
8,000
80
16,000
Nora Lee Antrim
64,000
640
Dorothea Lee Antrim (Widow of Hugh Antrim)
128,000
On or about February 24, 1954, Joseph transferred 1,867 shares of his common stock to Richard in exchange for $16,000 face amount of notes and 40 shares of the preferred stock and on January 2, 1958, Richard transferred 20 shares of preferred stock to his wife, Annie Belle T. Cardwell. Nora Lee Antrim is the sister of Joseph L. Antrim, Jr. *206 The Antrims and Cardwells are not related by blood or marriage, and in 1959 there was no partnership relationship between them. As a result of the transactions described above, on October 1, 1959, the stock of the corporation was owned as follows: Common Stock
Preferred Stock
Shares
Percent
Shares
Percent
Joseph L. Antrim, Jr.
5,333
66 2/3
120
15
Richard H. Cardwell, Jr.
2,667
33 1/3
20
2 1/2
Annie Belle T. Cardwell
20
2 1/2
Nora Lee Antrim
640
80
Total Shares Outstanding
8,000
100
800
100
Joseph L. Antrim, Jr., was president and treasurer and Richard H. Cardwell, Jr., was vice president and secretary of the corporation from its inception through 1959. They both devoted their full working time to the business. On September 18, 1959, the corporation sold 13,425 shares of the common stock of Tenco, Inc., for $1,076,974.59. The corporation realized gain on that sale in the amount of $1,041,873.79. The record does not disclose how the corporation acquired this stock or the nature thereof. On September 30, 1959, the corporation by its board of directors adopted the following resolutions with respect to redeeming *207 its 6 percent cumulative, nonvoting preferred stock: The Chairman next stated that, in view of the recent sale by the Corporation of its stock in Tenco, Inc., there was sufficient cash on hand to permit the redemption of all of the oustanding Preferred Stock of the Corporation. He suggested that this be done as of October 1, 1959, which is a quarterly dividend payment date. He explained that as of such date the redemption price would be $100 per share, plus the dividend of $1.50 per share just declared. After a discussion, on motion duly made and seconded, it was unanimously RESOLVED that, subject to obtaining the written consent of the holders thereof to redemption without notice, the 800 outstanding shares of 6% Cumulative Preferred Stock of the Corporation are hereby called for redemption on October 1, 1959, at the redemption price of $100.00 per share, plus accrued dividends to such date; FURTHER RESOLVED that such redeemed shares shall be held as treasury shares of the Corporation until retired and cancelled in the manner provided by law; FURTHER RESOLVED that the proper officers of the Corporation are hereby authorized and directed to take such further action as they, *208 or any of them, may deem necessary or advisable to consummate the redemption of 6% Cumulative Preferred Stock herein approved. On October 1, 1959, the corporation paid the then due quarterly dividend of $1.50 per share on its outstanding preferred stock and then redeemed its entire issue of 6 percent, cumulative nonvoting preferred stock for $100 per share, paid as follows: Joseph L. Antrim, Jr.
$12,000
Richard H. Cardwell, Jr.
2,000
Annie Belle T. Cardwell
2,000
Nora Lee Antrim
64,000
Total
$80,000
The reduction in capital stock of $80,000 was reflected in the corporation's balance sheet for 1959. The corporation had earnings and profits in 1959 in excess of $80,000. Its earned surplus was $322,600.58 on May 31, 1959, and was $1,090,372.49 on May 31, 1960. Except for the result of the gain on the sale of the Tenco stock, there was no substantial change in the corporation's net worth in 1959. Dividends were regularly paid each year on the corporation's preferred stock, but no dividends were paid on the common stock until the corporation's taxable year beginning June 1, 1959, and ending May 31, 1960, in which year $24,000 was distributed to common stockholders. *209 Joseph L. Antrim, Jr., reported dividends received on his common stock in the amount of $15,999 during 1959 and the Cardwells reported their dividends on their common of $8,001 that year. These common stock dividends were in addition to the preferred stock dividends paid in 1959 prior to the redemption and were declared and paid between October 1 and December 31, 1959. The distributions to Antrim and the Cardwells in 1959 were in redemption of their shares of preferred stock and not essentially equivalent to dividends. Opinion The only question in issue is whether the redemption of the preferred stock held by petitioners qualifies for treatment as a distribution in full payment for the stock on the ground that it was not essentially equivalent to a dividend within the meaning of section 302(b)(1). [1] The $16,000 received by petitioners in exchange for their preferred stock will be taxable as capital gain or ordinary income, depending upon our determination of this question. The general purpose of section 302 is to provide capital gain treatment to stockholders whose stock *210 is redeemed under circumstances which closely resemble an arm's-length sale of the stock to a third person. Under the statutory scheme, payments received in redemption of stock are taxed as capital gain or loss under section 302(a) if the redemption qualifies as one of four types of transactions set forth in section 302(b). Petitioners have conceded that qualification can only occur under the type of transaction set forth in 302(b)(1), i.e., a redemption which "is not essentially equivalent to a dividend." We recognize that the analysis of a dividend equivalency question is essentially based upon the particular facts of each case. Ralph L. Humphrey, 39 T.C. 199 (1962). See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 233-234 (1954). Thus, the actual application of various tests, rules and standards and the relative weight to be given them shifts with each case. See Henry McK. Haserot, 46 T.C. 864 (1966). Dividends are distributions of earnings and profits to the stockholders which do not change their proportionate interests in the corporation. Pullman, Inc., 8 T.C. 292 (1947). It has been stated that a stock redemption is essentially equivalent *211 to a distribution of a taxable dividend "whenever the practical result of the transaction is to distribute accumulated earnings essentially pro rata among the shareholders while leaving the ownership of the corporation basically the same." Keefe v. Cote, 213 F. 2d 651, 656 (C.A. 1, 1954). We believe that the initial step in our analysis of whether the distributions in controversy more closely resemble a sale or a dividend should therefore focus upon the effect of the redemption on the position of the shareholders with relation to their corporation and the other shareholders. See Bradbury v. Commissioner, 298 F. 2d 111, 116 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court; and Perry S. Lewis, 47 T.C. 129, 132 (1966). This approach does not analyze the effect of the redemption on one shareholder as if in a vacuum, but rather stresses the character of the redemption distribution when assessed on an overall basis taking into account the net effect of the transaction on all shareholders. See Samuel H. Kessner, 26 T.C. 1046 (1956), affirmed per curiam 248 F. 2d 943 (C.A. 3, 1957). Such an approach does not mean *212 that the tax consequences of a redemption will be the same for all shareholders based upon an overall characterization of the transaction. Different tax consequences can occur because the standards of section 302 are applied to each shareholder individually. Thus, one shareholder will not be considered to have received a dividend if the redemption terminates his interest in the corporation because of qualification for such treatment under 302(b)(3). The result will be the same even though the transaction, when viewed as a whole, is thought to be essentially equivalent to a dividend. [2]
We still believe, however, that the only rational approach to the perplexing question of whether a redemption distribution was essentially equivalent to a dividend is an analysis of all the facts *213 and circumstances surrounding the redemption, including the relative effects of the redemption on all shareholders. We recognize the general rule that where the redemption is essentially pro rata or has no substantial effects on the shareholders' relationship inter sese or vis-a-vis the corporation, dividend equivalence will usually be found absent countervailing considerations, Bradbury v. Commissioner, supra. However, the distribution in question here was neither substantially pro rata nor without significant shifts in the relationships and economic interests of the parties involved. In the instant case, Joseph L. Antrim, Jr., owned 120 shares, or 15 percent of the corporation's outstanding preferred stock, and he received $12,000 as a result of the redemption. The Cardwells owned 5 percent of the preferred stock and received $4,000, and Nora Lee Antrim owned the remaining 80 percent of the outstanding preferred stock; she received the lion's share, $64,000. Had a dividend of $80,000 been declared on the corporation's 8,000 shares of outstanding common stock, Joseph L. Antrim, Jr., would have received 66 2/3 percent of the distribution as a dividend, $53,333.33, and *214 Richard H. Cardwell, Jr., would have received 33 1/3 percent as a dividend, $26,666.66. Nora would not have received any portion of a dividend distribution on the common stock since she was not a common stockholder. As a result of the redemption here in question, Joseph L. Antrim, Jr., received 51 2/3 percent less and Richard H. Cardwell, Jr., and his wife received 28 1/3 percent less than they would have been paid if a dividend in the amount of the redemption distribution had been declared and paid on the common stock. It is clear from the foregoing calculations that the redemption was substantially disproportionate with regard to the common shareholders and it thus lacked an important dividend characteristic, that of pro rata distribution of earnings and profits among holders of the common stock. See Cobb v. Callan Court Company, 274 F. 2d 532 (C.A. 5, 1960); McGinty v. Commissioner, 325 F. 2d 820 (C.A. 2, 1963), affirming 38 T.C. 882 (1962). The substantial alteration in rights to earnings, differences of 51 2/3 and 28 1/3 percent, are strongly indicative of a distribution "not essentially equivalent to a dividend." We recognize that redemption *215 of nonvoting preferred stock can have no effect on the relative voting rights of the shareholders and therefore has no effect on the control of the corporation. However, the preferred stock involved represented an ownership interest in the corporation entitling the owners to participate in current earnings at the annual rate of 6 percent of the $100 par value on a cumulative basis. In the event of the corporation's liquidation, the preferred stockholders would be entitled to a preference in receiving the amount of their capital investment. The elimination of preferred stock in the present case has thus had a substantial effect upon the relative ownership interests of the former owners. See Northup v. United States, 240 F. 2d 304 (C.A. 2, 1957). The ownership interests of petitioners have been increased by the redemption, while the ownership interest of Nora Lee Antrim attributable to her 80 percent preferred stock interest was extinguished. We think that the foregoing change was a significant shift in the ownership interests in the corporation. The record before us does not clearly disclose the reasons for the preferred stock redemption, but it seems probable that the *216 large profit surplus arising from the sale of the Tenco stock and the large proportion of the corporation's preferred stock which was inherited by a person not active in its operation and affairs and possibly not interested in maintaining the resulting investment position were influential factors in arriving at the decision to redeem. As a consequence of the redemption, the corporation also obtained the removal of the financial burden of the 6 percent preferred stock dividend which was cumulative and had been paid regularly. The foregoing reasons do not constitute a corporate business purpose sufficient to avoid dividend treatment solely on that ground. See Bradbury v. Commissioner, supra.However, they are factors evidencing a bona fide legitimate business purpose to be considered together with all of the other facts and circumstances to be considered in determining whether or not dividend equivalence exists here. In analyzing the record of the corporation with respect to dividend distributions on the common stock, we note that although no dividends were declared prior to 1959, common stock dividends in the amount of $24,000 were distributed during the corporation's *217 taxable year ending May 31, 1960. Joseph L. Antrim, Jr., reported common stock dividends of $15,999 from C. W. Antrim & Sons, Inc., on his tax return for 1959 which are not questioned by respondent's determination. The Cardwells likewise reported their common stock dividends in their 1959 return. In the light of the stipulation that no dividends on common stock were paid in 1959 prior to October 1 and of the fact that respondent's deficiency determinations do not question or adjust the common stock dividends as reported, we conclude that they were declared and paid by Antrim & Sons between October 1 and December 31, 1959. We think this factor tends to rebut any suggestion of a tax avoidance scheme involving the redemption of the preferred stock. The common stock dividends, admittedly reported and taxed at ordinary income rates, were very substantial as compared with the amounts paid on a redemption of the preferred shares in the same year. The sale of the Tenco stock resulted in a large profit and substantial common stock dividend distributions occurred soon thereafter. We detect no hint of an attempted tax-free siphoning of the aforementioned profit by means of the redemption. The *218 amounts received by petitioners in exchange for their preferred stock were insignificant in relation to the profit attributable to the Tenco stock sale. We view the transaction as a restructuring of the capitalization of the corporation made possible by a large capital gain not attributable to the corporation's normal business earnings and probably made desirable because of the shift in the ownership of preferred stock occurring through inheritance. Finally, the $100 paid in redemption of each share of preferred stock represented paid-in capital and not capitalized earnings. After due consideration of all the facts and circumstances surrounding the redemption of the preferred shares held by petitioners, and upon careful application of pertinent tests and standards, we conclude and hold for all of the foregoing reasons that under the particular facts of this case petitioners received a distribution which was not essentially equivalent to a dividend within the meaning of section 302(b)(1). Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Here, for example, the largest beneficiary of the preferred stock redemption was Nora Lee Antrim who was paid $64,000 of the total redemption price of $80,000, 80 percent of the entire distribution; she owned no common stock whatsoever so that although she benefited most from the redemption, she nontheless cannot be charged with receiving a dividend equivalent because of the safe harbor of 302(b)(3).↩