**F. Paul DUFFY and Virginia H. Duffy, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 6946.

United States District Court, S. D. Ohio, W. D.

April 12, 1972.

Frank J. Richter, Cincinnati, Ohio, for plaintiffs.

Thomas R. Wechter, Tax. Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

PORTER, District Judge.

This is a tax refund case involving a Clifford trust (one with a lease-back). Two questions are presented. One, under the facts stipulated, did the taxpayer-lessee properly claim the rent as a deduction? Two, is the income of the trust taxable to the grantors?

Taxpayers purchased the land and building at 155 West McMillan Street, Cincinnati, Ohio, on July 31, 1962. On February 26, 1963, they executed a trust agreement, a copy of which is set out in the appendix. The trust agreement was with The Provident Bank and conveyed the property to the trustee in trust for the benefit of their four children. The trust was irrevocable for a period of ten years and thirty days. The Bank was sole trustee and was given complete powers. The duties of the trustee were spelled out and included the duty "to accumulate the income from each of the trusts for the beneficiaries thereof, unless expenditures of said income shall, in the sole discretion of the trustee, become necessary for the education, maintenance or welfare of such beneficiaries." The trust was amendable by joint action of the grantors upon expiration of the period of ten years and thirty days (*id.* ¶ 7).

The same day the trust agreement was executed the Bank leased the building back to plaintiff, F. Paul Duffy, a doctor, for an office. He claimed the lease payments as business deductions under 26 U.S.C. § 162. This was disallowed.

Under 26 U.S.C. § 162(a) (3) deductions are allowed for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including rentals or other payments required to be made as a condition to the continued use or possession, for the purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title, or in which he has no equity.

As noted, it has been stipulated that the taxpayer, Dr. Duffy, uses the leased building for his professional use. However, the government contends the expenses claimed as a deduction are not "necessary."

The two major cases involving similar facts are Skemp v. C. I. R., 168 F.2d 598 (7 Cir., 1948) and Van Zandt v. C. I. R., 40 T.C. 824 (1963). *Van Zandt* concerned a taxpayer who also owned a building which was used for his medical practice. He created two ten-year trusts for the benefit of his children, *naming himself as trustee.* He then conveyed the property by deed to the trustee, and as trustee leased the property back to himself. In that case it was held that there was no independent trustee. The grantor himself was the trustee. "For this reason and no other the petitioner has failed to bring himself within the ambit of those three decisions. [*Skemp, supra;* Brown v. C. I. R., 180 F.2d 926 (3 Cir., 1950); and Felix v. C. I. R., 21 T.C. 794 (1954).]" Van Zandt v. C. I. R., *supra,* at 830.

*Van Zandt* also held that where a sale and lease-back does not serve a utilitarian purpose, but is in reality a camouflaged assignment of income, the expenses are not considered "ordinary and necessary."

*Skemp, supra,* has a fact pattern very similar to *Brown* and *Felix.* In *Skemp* the taxpayer was a physician who owned a two-story building in which he conducted his medical practice. He created a trust for the benefit of his wife and children by conveying the building to the LaCrosse Trust Company as sole trustee. The trust was made irrevocable for twenty years duration unless the settlor and his wife were to die, in which case the trust would terminate. The taxpayer retained no significant control over the trust but did reserve the right to rent the building. Thereafter the taxpayer leased the building for his medical practice from the trust company. He then deducted the lease payment as a business expense.

The Court held in *Skemp* that unless a violation of the fiduciary duty can be imputed to the trustee, the taxpayer had a legal obligation to pay the rental. The trustee was duty bound to exact rent from the taxpayer and the taxpayer was duty bound to pay it. The Court held that this arrangement creates the same situation as if the taxpayer has rented a place to practice wholly apart from the trust property. In *Skemp* it was found that the taxpayer had irrevocably divested himself of all title and right to the property and could only occupy it upon the payment of rent, thus reflecting the change in the taxpayer's economic status. Thus, the taxpayer was allowed the deduction.

Oakes v. C. I. R., 44 T.C. 524 (1965) recognized a line of demarcation between *Van Zandt* and *Skemp, Brown* and *Felix.* The *Oakes* case involved facts similar to *Skemp* where the physician created a trust for his children. Certain land and a building owned by the taxpayer were conveyed to the trustee, a bank. Then the taxpayer leased back the building and subsequently deducted the rental payments as business expenses under § 162 (a).

*Oakes* stated that while the line of demarcation might be thin between the *Skemp, Brown* and *Felix* cases on one side and *Van Zandt* on the other, a difference nevertheless exists. One of the pivotal factors is the *actual independence* of the trustee. In *Van Zandt* the trustee was the grantor (or taxpayer) himself, but in *Oakes* like *Skemp, Brown* and *Felix,* the control and ownership passed from the grantor to a bank as an independent trustee.

*Oakes* went on to hold that where a grantor gives business property to a valid irrevocable trust over which he retains no control and then leases it back, it is not necessary to inquire as to whether there was a business reason for making the gift. There is none. Under such circumstances, the test of business necessity should be made by viewing the situation as it exists after the gift is made.

In the instant case the joint stipulation of facts which contains the trust agreement shows that there was (1) an irrevocable trust for ten years and thirty days; (2) an independent trustee as sole trustee with complete powers; (3) a valid deed conveying the property to the trustee; (4) a written lease-back arrangement; and (5) no retention by the grantor of any significant control over or interest in the trust during the taxable years we are here concerned with.

We conclude that the instant case is like the *Skemp* case and therefore controlled by it. That does not end the discussion, however, because the United States has found the taxpayers to be the owners of the property and, in the alternative to disallowing the rent as a deduction, has treated such rent as income to the taxpayers.

We must therefore determine whether the grantors are the owners of the corpus of the trust under 26 U.S.C. §§ 676 and/or 677. Section 676(a) provides:

"The grantor shall be treated as the owner of any portion of a trust,

whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both."

Section 677 reads in part:

"The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a non-adverse party or both, may be— * * * (2) held or accumulated for future distribution in the grantor . . . ." 26 U.S.C. § 677.

Section 676(b) provides:

"Power affecting beneficial enjoyment only after expiration of ten-year period.—Subsection (a) shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that a grantor would not be treated as the owner under section 673 if the power were a reversionary interest. But the grantor may be treated as the owner after the expiration of such period unless the power is relinquished." 26 U.S.C. § 676(b).

Section 677(a) provides:

"This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished." 26 U.S.C. § 677(a).

Section 673 states:

"The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception . . of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer."

Under these sections a grantor will be taxed on the income of a trust as the owner is he retains significant control over the trust or a power to revest the trust in himself, unless the control or power is not exercisable within a ten-year period. *Skemp, supra.*

These sections of the Internal Revenue Act were passed (and the present controversy arose) after the decision of the Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940). In *Clifford* the grantor named himself the trustee of certain securities for five years and was to pay to his wife the income from that trust. The grantor also retained the right to accumulate the income and, with a few exceptions, had complete control over the fund. Under these circumstances the grantor was considered to be the owner of the trust and the income of the trust was taxed to him.

"The short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by the respondent all lead irresistably to the conclusion that respondent continued to be the owner . . . ." *Clifford, supra,* at 335, 60 S.Ct. at 556.

"Since the income remains in the family and the husband retains control . . . he has rather complete assurance that the trust will not effect any substantial change in his economic position." *Clifford, supra,* at 335 60 S.Ct. at 557.

"For as a result of the terms of the trust and the intimacy of the familial relationship respondent has retained the substance ot full enjoyment of all rights which previously he had in the property." *Clifford, supra,* at 336, 60 S.Ct. at 557.

In the instant case taxpayers' trust was irrevocable for ten years and thirty days and falls within the exception to §§ 676 and 677, unless the taxpayers retained

sufficient interest in or control over the trust during the initial ten-year period so as to require that they be treated as the owners for tax purposes.

The United States relies on Humphrey v. C. I. R., 39 T.C. 199 (1962). That was a case where the taxpayer created a trust for the benefit of his children. It was to terminate in 15 years. Taxpayer was also the trustee along with his brother and father. Hence, none of the trustees was adverse. There was no limitation on the extent to which they could accumulate income.

The taxpayer in *Humphrey* alleged, as does the taxpayer here, that he came within the exception of §§ 676 and 677 concerning trusts for period over ten years. The Court disagreed, relying on the following regulation:

"The exception set forth in 677(a) (and 676) does not apply merely because the grantor must await the expiration of a period of time before he can receive or exercise discretion over previously accumulated income of the trust, even though the period is such that the grantor would not be treated as owner under 673 if a reversionary interest were involved. Thus, if income of a trust is to be accumulated for ten years and then will be, or at the discretion of the grantor may be, distributed to the grantor, the grantor is treated as the owner of the trust from its inception." 1.6777(a)–1–Income Tax Regs., 1961, Vol. I.

The government claims that section 2 of the trust agreement allows the taxpayer to accumulate income from the trust and then at his discretion distribute it to himself after the ten-year and thirty day period. We disagree.

We conclude the *Humphrey* case is distinguishable from the instant case. In the instant case neither taxpayer is a trustee, as he was in *Humphrey*. The taxpayers here have given complete interest and control of the trust to an independent trustee, the bank. The clear language and intent of section 2 of the trust agreement is for the *trustee* to ac-cumulate the income of the trust for the benefit of the *beneficiaries* and to distribute such accumulated income to the *beneficiaries* upon their reaching a certain age. The bank has no "unfettered discretion" to accumulate for taxpayers.

There is no conflict of interest as there was in *Humphrey*. In the *Humphrey* case the taxpayer, being the trustee, had the power to accumulate the income of the trust which eventually might be recaptured by the taxpayer when the trust terminated.

In the instant case, unless we impute a violation of fiduciary duty to the trustee, there is no such conflict. The trustee is dutybound to accumulate the income of the trust *for the benefit of the beneficiaries* and to distribute it to them or to use it for their welfare, as he deems best. The trustee bank is under no control of the original grantor (taxpayer), and its only interest lies in administering the trust property for the best interests of the beneficiaries.

Next, we must say we are surprised at the government's argument that the taxpayers have retained equity in the trust property because the agreement provides it is amendable after ten years and thirty days (¶ 7).

Of course, there is "equity" in the legal sense, but if recovery of the trust property after the ten-year exception makes the income of the trust taxable to the grantor, the plain language of the exception would be rendered meaningless.

In this connection, if the grantors had stated affirmatively that any accumulated income was to be for the express use of the beneficiaries during the trust and upon its termination and if they had disavowed any interest in such income there would be no question but that the trust falls within the exceptions to §§ 676 and 677. We hold that even though there is some possibility of recovery of the accumulated income, that does not make the income of the trust taxable to the grantors where there is an independent trustee with complete powers and a duty to accumulate income

for the benefit of the beneficiaries and the revesting of the interest in the grantor is only a mere possibility.

■■ Before concluding we note that it is settled that the taxpayer may act in a manner which will minimize his taxes. The purpose a settlor had in establishing a trust is irrelevant on the question as to whether income from the trust is taxable to the settlor. Helvering v. Achelis, 112 F.2d 929 (9 Cir., 1940).

To recapitulate, we conclude that the taxpayers were not the owners of the trust under 26 U.S.C. §§ 676 and/or 677 and the income of the trust is not taxable to them. We also conclude that the taxpayer to whom the property was leased back as a medical office properly deducted the rent as a business expense. The parties' stipulation (¶ 23) provides that the exact refund to the plaintiffs as a result of this action together with interest according to law will be ascertained 60 days after the court files its opinion. It goes on to say that if they cannot agree, the matter will be submitted to the Court. Pursuant to this an appropriate order should be submitted for approval.

## APPENDIX

### TRUST AGREEMENT

This Agreement and Declaration of Trust, dated this 26th day of February, 1963, by and between F. PAUL DUFFY and VIRGINIA H. DUFFY, of Cincinnati Ohio, hereinafter called the Grantors and THE PROVIDENT BANK of Cincinnati, Ohio, hereinafter called the Trustee,

WITNESSETH:

The Grantors have this day conveyed to the Trustee by deed recorded in Deed Book 3969, page 619 of the Records of Deeds in the Office of the Recorder of Hamilton County, Ohio, the following described property, to-wit:

Building known, numbered and designated as No. 155 West McMillan Street, Cincinnati, Ohio on the following described parcel of ground:

Situate in the City of Cincinnati, County of Hamilton, State of Ohio, and in Section 13, Township 3, Fractional Range 2, Miami Purchase, and being a part of Lots Nos. 1 and 2 of Sarah Ammen's Estate Subdivision as recorded in Plat Book 1, page 127 of the Plat Records of Hamilton County, Ohio and beginning at a point in the South side of McMillan Street 100 feet West of the center line of an abandoned road 16½ feet wide, which road lies immediately adjoining on the East line of Lot No. 1 of Sarah Ammen's Estate; thence South, parallel with the East line of said Lot No. 1, 147 feet, more or less, to a point 100 feet North of Lyon Street; thence West, parallel with the South line of McMillan Street 55.07 feet to a point, the Southeast corner of Henry Moellering's lot; thence North, parallel with the East line of said Lot No. 1, and along the East line of said Moellering's lot, 147.69 feet to a point in the south line of McMillan Street; thence East, along the South line of McMillan Street, 55.07 feet to the place of beginning,

to have and to hold until the Trustee and its successors, including any corporation, association or other form of business organization into which it may be converted or merged or to which it may transfer substantially all of its assets and good will. IN TRUST, HOWEVER, for the following uses and purposes and subject to all the terms and conditions hereof:

1. To establish a separate trust therein in equal shares for each child of the Grantors now living, to-wit: James Paul Duffy, born May 30, 1945, Timothy Michael Duffy, born November 23, 1948, Julia Marie Duffy, born August 7, 1951, and Eileen Duffy, born November 8, 1956, or for each child hereafter to be born.

2. To accumulate the income from each of the trusts for the beneficiaries thereof, unless expenditures of said income shall, in the sole discretion of the Trustee, become necessary for the education, maintenance or welfare of such ben-

eficiaries. At the time any such beneficiary shall have attained the age of 21 years, any accumulated and unexpended income shall then be added to the principal of the trust established on behalf of such beneficiary; and thereafter, all of the income of such trust shall be distributed to such beneficiary.

3. The Trustee may also, from time to time, pay out of the principal of the trusts to or for the benefit of any beneficiary thereof, such amounts as the Trustee, in its sole discretion, may determine to be necessary for such beneficiary's education, maintenance or welfare, provided however, that if any such payments out of principal are made, such beneficiary's interest in the income shall thereafter be proportionately reduced and such payments out of principal shall be charged against the share of such beneficiary in the distribution of principal hereinafter provided for.

4. The principal of the Trusts and any undistributed income therefrom shall be distributed to the beneficiaries thereof at the time the youngest child of the Grantors shall have attained the age of 25 years.

5. In the event that any of the Grantors' said children shall die during the term of this trust, leaving issue surviving, then the issue of such child shall take the share of the father or mother, as the case may be, both of income and/or principal of the trust estate when such income and/or principal shall be distributable under the terms of this agreement. Provided that said issue shall take per capita and not per stirpes, should the deaths of all of the children of the Grantors take place before the termination of this Trust and provided, further, that should any of the said children of the Grantors die before the termination of this Trust and leave no issue surviving them, the share of such deceased child shall, subject to the provisions hereinbefore made in the event of the death of all of said children before the termination of this Trust, be equally divided among the survivors of said children or their issue per stirpes.

6. During the minority of any beneficiary hereunder, payment of income for his or her benefit may be made to the parent, guardian or other person having the care and custody of such minor beneficiary or the same may be expanded by the Trustee for such minor beneficiary's benefit or may be paid to such minor beneficiary or may be made in such other manner as the Trustee in the exercise of its judgment believes will be for the best interests of such beneficiary. The receipt of any beneficiary, even though a minor, or of any person to whom amounts are paid for any beneficiary's benefit shall be a full discharge and acquittance to the Trustee for the amount so disbursed.

7. These Trusts shall be irrevocable for a period of 10 years and 30 days from the date hereof, provided that upon the death of both of the grantors, within said period of time, the Trust shall become irrevocable without any limit or qualification as to time, except for the provisions as to termination thereof. Provided, further, that upon the expiration of said period of 10 years and 30 days, this Trust shall be revocable and amendable by the joint action of the grantors.

8. The Trustee shall have complete custody and control of the trust property and all additions thereto with power to receive, hold, manage, convert, sell, assign, transfer, mortgage, pledge, lease, alter, exchange, invest and reinvest and in any other way deal with the trust property as it in its sole discretion shall deem to be to the best interest of the trust estate. By way of illustration and not of limitation of the Trustee's powers, the Grantors authorize the Trustee:

a. To invest and reinvest the trust funds in such securities, stocks, bonds, notes, debentures, mortgages or other securities, properties or interests of any nature whatsoever, real or personal, as the Trustee shall deem to be the best interest of the trust and the beneficiaries hereof regardless of any statutes or rules of court, now or hereafter tending to limit invest-

ments that may be made by fiduciaries;

b. To determine what expenses shall be charged against principal and what against income;

c. To compromise, arbitrate or otherwise adjust claims in favor of or against the trust estate on such terms which in the judgment of the Trustee seem desirable;

d. To receive all dividends, income, rents, profits, rights and all property of every nature and description due to trust estate;

e. To execute all deeds, mortgages, contracts, leases, bills of sale, assignments, options, notes, proxies, consents, waivers and all other instruments in writing necessary or advisable in the administration of the trust;

f. To cause the securities which shall from time to time constitute the trust estate or any part thereof to be registered in the name of the Trustee or in the name of a nominee or to take and keep them unregistered and in such condition as they will pass by delivery;

g. To make advances or to borrow money from its own banking department or from any other person, firm or corporation upon such terms and conditions as the Trustee may deem necessary or proper for the improvement, protection or preservation of the trust estate or to carry out the purposes of this trust. The Trustees shall have a lien upon the trust estate for the repayment of any advances and any interest thereon and may issue promissory notes and secure the repayment of any sum so borrowed by mortgaging or pledging any or all of the trust;

h. The Trustee may employ such agents and counsel as it may deem necessary for the proper administration of the trust and pay them such compensation as they deem just.

9. The Trustee shall submit statements of Receipts and Disbursements on regular disbursement dates to the Grantors or to the beneficiary or beneficiaries then entitled to income under the provisions of this agreement.

10. The Trustee shall be paid a reasonable compensation as may be agreed upon between it and the Grantors from time to time. Such compensation shall be no greater than that which it charges others for similar services.

11. No purchaser at any sale made by the Trustee shall be bound to inquire into the expediency, propriety, validity or necessity of such sale or to see to, or be liable for, the application of the purchase moneys arising therefrom.

12. Additional property may be brought within the terms of this Agreement by transferring, assigning and conveying the same to the Trustee and by annexing hereto additional exhibits setting forth a concise description of the same.

13. This instrument is composed of six (6) pages exclusive of acknowledgments and schedules. Each of the copies shall be considered as an original, but all or more than one of said copies together shall be considered as constituting a single instrument.

IN WITNESS WHEREOF, the parties hereto have set their hands on the day and year first above written.

(s) F. Paul Duffy
F. Paul Duffy

(s) Virginia H. Duffy
Virginia H. Duffy

GRANTORS

WITNESS:

(s) Dorothy C. Stoll

THE PROVIDENT BANK

By (s) Julius W. Reif
Julius W. Reif, Vice President
& Trust Officer

By _____
Trust Officer

STATE OF OHIO
COUNTY OF HAMILTON } SS:

On this 26th day of February, 1963, before me personally came F. PAUL

DUFFY and VIRGINIA H. DUFFY, to me known and known to me to be the individuals described in and who executed the foregoing instrument, and they acknowledged to me that they executed the same.

(s) Dorothy C. Stoll

Notary Public
Hamilton County
State of Ohio